Argued November 4, 1896; decided January 18, 1897.

## MITCHELL v. HOLMAN.
·(47. Pac. 616.)

IJRISDICTION OF EQUITY—SET-OFF AGAINST INSOLVENT JUDGMENT DEBTOR.*—Equity will entertain a suit to compel the allowance of a set-off against a judgment on a note obtained by one who held it only as collateral for a debt less than such note, where this latter fact was not known to the maker until the trial of the law action (and so was not pleaded), and the payee is insolvent.

REFORMATION OF WRITTEN CONTRACTS—MISTAKE.—Equity will not reform a written contract on the ground of mistake unless the party asking reformation shows clearly, not only that the alleged mistake exists, but that it was mutual, and was not caused by his negligence: *Epstein* v. *State Ins. Co.*, 21 Or. 179; and *Kleinsorge* v. *Rohse*, 25 Or. 51, approved and followed.

REFORMATION OF CONTRACT—MISTAKE AS TO LEGAL EFFECT.—That the legal effect of the language used in a contract is different from what one of the parties supposed it to be is not a ground for relief from the contract, or for reforming it, after one party has executed his part: *Archer* v. *California Lumber Co.*, 24 Or. 341, cited and approved.

CORPORATIONS—OFFICER'S COMPENSATION.—Where an officer of a corporation performs for it services that are outside of his official duties he is entitled to receive their reasonable value, and the doctrine that such an officer acquires no legal claim for services performed in the discharge of his duties unless the compensation therefor was fixed by a resolution or by-law of the board of directors prior to the performance of the service, has no application: *Wood* v. *Lost Lake Mfg. Co.*, 23 Or. 20, distinguished.

*NOTE.—The authorities bearing on this question are collected and arranged in a note on the General Principles Governing Equitable Set-off after Insolvency, printed with *St. Paul Trust Co.* v. *Leck*, 47 Am. St. Rep. 578. In 54 Am. St. Rep. is a valuable monograph on Relief in Equity, other than by Appellate Proceedings, against Judgments, Decrees, and other Judicial Determinations, in which (at

From Marion:   H. H. HEWITT, Judge.

This suit was brought by S. Z. Mitchell, E. P. McCor-nack, and others against Thos. Holman, A. S. Bush, and others, to compel the allowance of an offset to a judg-ment obtained against the plaintiffs by Bush on a note which he held as collateral from Holman.   That case was appealed on the question whether an agreement in a note to pay an attorney fee "in case of suit" would sup-port a recovery of such a fee in an action on the note, the distinction between the two classes of proceedings being still maintained in this State:   *Burrage* v. *Bonanza Gold Min. Co.*, 12 Or. 169.   The appeal was dismissed. *Bush* v. *Mitchell*, 28 Or. 92.   In this present suit there was a decree for defendants, and plaintiffs appeal.

MODIFIED.

For appellants there was a brief and an oral argument by *Messrs. Ossian Franklin Paxton* and *Geo. G. Bingham.*

For respondent there was a brief and an oral argument by *Messrs. H. J. Bigger* and *Tilmon Ford.*

Opinion by MR. JUSTICE BEAN.

This suit arises out of the following facts:   On Febru-ary 24, 1893, the defendant Bush recovered judgment against the plaintiffs for the sum of $24,566.50 on a promissory note, of date August 31, 1892, executed by them to the defendant Holman, and by him indorsed and transferred to Bush before maturity, as collateral security for about $16,000.   Prior to the commencement of this

pages 224 to 229) is a discussion of the rule requiring equitable de-fenses to have been presented in the former case, and the exceptions thereto.   See also pages 763, 766, and 768 of an exhaustive note in 31 L. R. A., on Injunctions against Judgments for Defenses existing prior to their Rendition.—REPORTER.

present suit, the plaintiffs paid Mr. Bush $22,379.97 on the judgment, and, as an offset to the balance of $2,938,' tendered a receipt in full for a claim of that amount which they held against the defendant Holman, and demanded satisfaction of the judgment, which being refused, they brought this suit for the purpose of offsetting the amount due them from Holman against the balance of the Bush judgment. The amount paid Mr. Bush being sufficient to pay and discharge his demand against Holman, it is admitted that he has no interest in the balance due on the judgment, except as trustee for his co-defendant, and hence this controversy is between plaintiffs and Holman. As a ground for equitable jurisdiction, it is averred that at the time the action on the note was brought by Mr. Bush, and up to the trial, plaintiffs supposed and believed that he owned the note in his own right, and so had no opportunity, if otherwise permissible, to plead the amount due them from Holman as a set-off in such action, and that at the time of the commencement of this suit Holman was practically insolvent. These allegations are sufficiently supported by the testimony for the purposes of this case. The evidence shows that plaintiffs had no knowledge of the character or nature of Mr. Bush's interest in the note until it was developed on the trial, and that when this present suit was commenced Holman was very largely indebted, and his property incumbered to such an extent as to render it highly inequitable and unjust for him to enforce the judgment under the circumstances of the case. We shall, therefore, without further reference to this branch of the case, proceed to a consideration of the merits.

On the 15th of April, 1893, a corporation known as the Oregon Electric Light Company, of which Holman was the manager, was and for a long time prior thereto had been supplying certain of the State buildings at Salem

with electric light, under a contract with the State for the stipulated and agreed compensation of $5,000 per annum, payable quarterly, and at that time there was due and unpaid thereon the sum of $2,708.33. The capital stock of the corporation was divided into 500 shares, of $100 each, of which the defendant Holman owned 220 shares, D. P. Thompson 220, and J. Loewenberg 60. On the day named, the defendant Holman and Mr. Thompson sold and assigned for a good and valuable consideration all their stock to the plaintiffs Mitchell, Anson, and Paxton, and one E. P. McCornack, and delivered to them all the corporate records and property. On the 17th of the same month, a meeting of the stockholders was held, all the stockholders of the company being present either in person or by proxy, at which new directors were elected, who immediately qualified, and assumed control of the corporation, and elected a new set of corporate officers. On May 5, 1893, after he had parted with all his stock, and therefore ceased to be an officer of the corporation, and without any authority from it whatever, Holman, representing himself to be still the manager of the corporation, collected from the State the amount due the company on the lighting contract, and used a part thereof in payment of the operating expenses of the corporation during the time it was being earned, and retained the remainder. On the 12th of August, 1893, the Oregon Electric Light Co. duly sold and assigned its claim against Holman for the money so collected by him to the plaintiffs in this suit, and they are now the owners and holders thereof, and seek to set off the amount of such claim against the judgment in favor of Bush, but which in fact belongs to Holman. If these were all the facts in the case, there could be no question as to who should prevail in this suit. The money collected by Holman was due the corporation and not the stockholders, and when

he sold and assigned all his stock he ceased to be an officer of the corporation, or any longer interested therein, and had no more right to this money than he had to the plant or other property of the company. The corporation is an entity, separate and distinct from its stockholders, and the change of the latter could in no way affect its rights.

But Holman, to overcome the force of this position, alleges as a defense that the stock of himself and Thompson was sold to Mitchell, Anson, Paxton, and McCornack under and in pursuance of an option contained in a contract between himself, as the representative of all the stockholders of the corporation, and Anson, and McCornack, made on January 26, 1893, and that, as a part of such contract, he and his associates reserved the right to collect from the State any money due the corporation under the lighting contract referred to, at the time the option to purchase the stock should be exercised by Anson and McCornack. This contract is in writing, and contains no such stipulation or agreement; but Holman avers that it was omitted therefrom by a mutual mistake of the parties, and this is the only defense set up in the answer, and the controlling question in this case. Upon this issue the burden of proof is with him, and he must show by clear and satisfactory evidence, not only that there is a mistake in the written agreement, but that such mistake was mutual, or shared in by all the parties, and that it did not occur through his own negligence: *Lewis v. Lewis*, 5 Or. 169; *Stephens v. Murton*, 6 Or. 193; *Epstein v. State Ins. Co.*, 21 Or. 179 (27 Pac. 1045); *Kleinsorge v. Rohse*, 25 Or. 51 (34 Pac. 874). And this he has wholly failed to do. The written contract was prepared by the plaintiff Anson, and the undisputed evidence shows that he intentionally drew it in the precise form in which it was executed, and that no words were omitted which he

intended should be inserted, and that no words were included which he intended should be omitted. In short, there is not a particle of evidence in the entire record to show that the written contract is not just as Anson and McCornack intended it should be, and they both testify that it correctly expresses the terms of the agreement as actually made. It thus appears that if there is a mistake in the contract at all it is a mistake of Holman alone; and, while a mistake of one party to an agreement may in some instances be ground for the rescission of the contract, or afford a sufficient reason for a refusal by a court to enforce specific performance thereof, it clearly will furnish no ground for reforming it. And this for the paramount reason that, if the written contract should be reformed on proof of the mistake of one of the parties alone, great injustice might be done to the other by imposing upon him the consequences of a contract to which he had never assented, and which he may have been unwilling to make in the first instance. But, besides this, the undisputed evidence shows that after Anson drew the contract he submitted it to Holman for examination, who retained it for a couple of days for that purpose, and then signed it without objection, although it contains no reference to or mention of the amount due the corporation from the State of Oregon. This alone would probably be a sufficient bar to the relief sought, on the ground of negligence.

But it is claimed, and the court below found, that the deferred payment from the State was not in the minds of the parties at the time the contract was made, or during any negotiations pertaining thereto, and for that reason the written contract ought to be modified so as to exclude such claim against the State from its operation. Considering this to be true, it affords no ground at this time for the reformation of the contract actually made,

or for relief from the legal consequences thereof. If the parties did not make the contract they intended, or if the legal operation of the one made is different from what they expected, it might, perhaps, have been a sufficient ground for a refusal on the part of Holman to perform, but it affords no defense to this suit. The contract as made has been fully executed, and a court cannot now relieve either party from the legal consequences thereof: 15 Am. & Eng. Enc. Law (1st Ed.), 631. So that, on this record we do not see any grounds upon which the defendant can be relieved from the consequences of his contract, although it seems probable he did not suppose that the legal effect of the sale and transfer of his stock in the corporation would deprive him of the right to collect the money due from the State at that time. Such, however, is the effect, and the court cannot relieve against a mere mistake of that kind: *Archer* v. *California Lumber Co.*, 24 Or. 341 (33 Pac. 526). But it appears from the record that he paid $1,222 of the debts of the corporation from the money so collected by him, and for this sum he is equitably entitled to a credit.

The doctrine that an officer of a corporation acquires no legal claim against it for services performed in the discharge of his official duties, unless a compensation therefor was fixed by resolution or by-law of the corporation prior to the performance of the services, has no application to the questions raised in this case. The services performed by Holman, and for which he was accustomed to receive compensation at the rate of $100 per month, did not pertain to the duties devolving upon him as director and president of the corporation; and hence, under the rule announced in *Wood* v. *Lost Lake Mfg. Co.*, 23 Or. 20 (37 Am. St. Rep. 651, 23 Pac. 848), he is entitled to compensation upon a quantum meruit, and it is not questioned but what the services were reasonably worth

the sum charged therefor. It follows, therefore, that the decree of the court below must be modified; that plaintiffs be allowed a credit on the judgment against them in favor of Bush for the sum of $1,486.33, with interest thereon at the rate of eight per cent. per annum from the 5th day of May, 1893; and that, upon the payment of the balance due thereon, the defendants satisfy the judgment. Neither party will recover costs.

MODIFIED.

Argued November 11, 1896; decided January 18, 1897; rehearing denied.