Argued October 3, decided October 14, 1913.

## BARRENSTECHER *v.* THE HOF BRAU.

(135 Pac. 518.)

Corporations—Officers—Right to Compensation.

1. An officer of a corporation cannot recover compensation for the performance of duties incident to his office, unless authorized by the board of directors or by the by-laws, but, if services outside or apart from those imposed upon him by virtue of his office are rendered at the request or with the acquiescence of the corporation, recovery can be had upon a *quantum meruit.*

Corporations — Officers—Recovery of Compensation—Sufficiency of Evidence.

2. In an action involving the right of the president and treasurer of a corporation who owned one half of its stock to compensation

for services, evidence *hèld* to show that, following the death of plaintiff's husband who owned the balance of the stock, such president and treasurer performed valuable services outside of the duties imposed upon him as an officer or director, under such circumstances that a reasonable person receiving the benefit of his efforts ought to have understood that they were to be remunerated.

[As to the right of corporation officers to compensation for services, see note in 136 Am. St. Rep. 909.]

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2.    Statement by MR. JUSTICE McNARY.

This is a proceeding brought by Effie Barrenstecher against the Hof Brau, a corporation, and Fritz Strobel, to determine the legal right or wrong of an officer and director of a corporation to appropriate corporate funds in payment for services rendered.   So far as pertinent to an understanding of the question involved, the complaint recites: That in May, 1910, plaintiff, defendant Fritz Strobel, and Chas. Barrenstecher, now deceased, organized and incorporated under the laws of the State of Oregon the Hof Brau, with a capital stock of $15,000, divided into 150 shares each of the par value of $100, issued as follows:ʿSeventy-five shares to Fritz Strobel, seventy-four shares to Chas. Barrenstecher, and one share to plaintiff.   That the three holders of stock were elected as the governing body; defendant Fritz Strobel being chosen to fill the office of president and treasurer, while that of vice-president and secretary fell to Chas. Barrenstecher. That, approximately six weeks following the birth of the corporation, Chas. Barrenstecher died testate; the will naming and the court appointing as executor F. J. Alexander Mayer, who continued in office until the month of September, 1911, when a  settlement of the estate was had and the property delivered to plaintiff. The pleading concludes by charging that the defendant Fritz Strobel usurped the control and management of the business and refused to call or permit a meeting of

the stockholders to be held to elect a director to succeed Chas. Barrenstecher, and that defendant during the fall of 1911 appropriated to his own use $4,250 of the funds of the corporation.

Defendant Fritz Strobel in his answer admitted the appropriation of the money, and averred the business incorporated under the name of the Hof Brau was established and developed into a paying business by the personal efforts and attention of himself and Chas. Barrenstecher over a period of 16 years; that plaintiff and he had been at variance about the management of the business from the inception of the corporation in May, 1910, until its disposal in December, 1911, during which time he had been the manager of the enterprise; and that the services therefor were reasonably worth the sum of $4,250.

A reply denying the affirmative assertions of the answer concluded the issues.

The trial court made findings of fact upholding the position of defendant Fritz Strobel and decreed judgment in his favor in the sum of $4,250.

                                      AFFIRMED.

For appellant there was a brief over the names of *Manning & White* and *Mr. Robert E. Hitch,* with an oral argument by *Mr. Samuel White.*

For respondent, Fritz Strobel, there was a brief, with oral arguments by *Mr. Whitney L. Boise* and *Mr. John T. McKee.*

MR. JUSTICE McNARY delivered the opinion of the court.

1. The disagreement of counsel is not so much over the law involved as it is over the application of the legal principles to the facts of the case. In step with

the line of judicial thought obtaining in most of the states, this court has recognized and applied the rule that an officer of a corporation cannot recover compensation for the performance of the duties incident to his office, unless authorized by the board of directors or by the by-laws of the company, yet, if the services performed lie outside or apart from those imposed upon him by virtue of his office and rendered at the request or with the acquiescence of the corporation, recovery could be had upon a *quantum meruit: Wood* v. *Lost Lake Mfg. Co.,* 23 Or. 20 (23 Pac. 848, 37 Am. St. Rep. 651) ; *Mitchell* v. *Holman,* 30 Or. 280 (47 Pac. 616) ; *Baines* v. *Coos Bay Navigation Co.,* 41 Or. 135 (68 Pac. 397).

The Supreme Court of Massachusetts, in *Pew* v. *Gloucester Nat. Bank,* 130 Mass. 391, have clearly stated the rule which is quoted with approval by the Supreme Court of the United States in *Fitzgerald Construction Co.* v. *Fitzgerald,* 137 U. S. 98 (34 L. Ed. 608, 11 Sup. Ct. Rep. 36) : "A bank or other corporation may be bound by an implied contract in the same manner as an individual may.  But, in any case, the mere fact that valuable services are rendered for the benefit of a party does not make him liable upon an implied promise to pay for them.  It often happens that persons render services for others, which all parties understand to be gratuitous.  Thus directors of banks and of many other corporations usually receive no compensation.  In such cases, however valuable the services may be, the law does not raise an implied contract to pay by the party who receives the benefit of them.  To render such party liable as a debtor under an implied promise, it must be shown, not only that the services were valuable, but also that they were rendered under such circumstances as to raise the fair presumption that the parties intended and under-

stood that they were to be paid for; or at least that the circumstances were such that a reasonable man, in the same situation with the person who receives and is benefited by them, would and ought to understand that compensation was to be paid for them."

2. Do the facts of the case bring the defendant within the circle of this doctrine? Let us investigate. Strobel admits that he was not entitled to compensation simply for performing the duties associated with the office of president and treasurer of the corporation, or for those activities incident to the position of director, but contends the services rendered were valuable and of a character peculiar and extraordinary and were performed under such circumstances as to make it fairly presumable that he expected compensation therefor.

Article 1 of the by-laws provides: "The corporate powers of this corporation shall be vested in a board of three directors, and the other officers of this corporation shall be a president, a treasurer, a vice-president and secretary, all of whom shall be members of the board of directors."

Article 7 of the by-laws provides: "It shall be the duty of the directors to cause to be kept a complete record of all their minutes and acts, and of the stockholders to declare dividends out of the surplus profits whenever in their opinion such dividends shall be warranted; to supervise all officers and see that their duties are properly performed; to cause to be issued to the stockholders, in proportion to their several interests, certificates of stock not to exceed in the aggregate the capital stock of this company."

Article 8 of the by-laws provides: "The president and treasurer and the vice-president and secretary shall perform such duties as may be required of them from time to time by the directors."

These provisions are the only ones found in the by-laws germane to the controversy in mind.

At a special meeting of the board of directors held on May 10, 1910, at the residence of Chas. Barrenstecher, now deceased, the following resolution was introduced by Chas. Barrenstecher and unanimously carried: "Resolved, that Frederick Strobel, as president of this corporation, or Charles Barrenstecher, as secretary of this corporation, be and they are hereby authorized to make, execute, acknowledge and deliver any contract, bond, note or obligation on behalf of this corporation that they or either of them may see fit with or without attaching the corporate seal of this corporation thereto, and all of their acts or either of their acts in that behalf, so performed by them, or either of them, are hereby ratified and confirmed by this corporation. Resolved, further, that they or either of them are hereby authorized to draw and indorse all checks for and on behalf of this corporation and to transact all business and to do all matters and things that they or either of them may deem best for the interests of this corporation, and all of said acts so performed by them, or either of them, in that behalf are hereby ratified and confirmed." This resolution may not have been a predicate sufficient by itself to justify an appropriation of corporate funds by defendant for services rendered to the corporation, yet it throws a side light along the way and may fairly be considered with the other evidence in arriving at a solution of the controversy.

The testimony is indisputable that the services rendered were of the monetary value claimed by defendant Strobel; and, from a reading of the transcript of testimony, the conclusion is inevitable that the services performed were outside of the duties assessed against defendant as an officer or director of the corporation. On that point defendant testified as follows:

"A. Just about the time he [Chas. Barrenstecher] went away to California, I think, I put in from 15 to 17 hours every day. I went down in the morning at 10 or half-past 10, and I stayed until about half-past 8 in the evening, and for a while I rested on two chairs, and then about half-past 8 to half-past 9 or 10, about 10 or a little after 10, I got up again and attended to my duty, and I closed every night. I don't think I missed, while Mr. Barrenstecher was living—I had missed two times closing up; and Mr. Manning—

"Q. (Interrupting.) What time did you usually close up?

"A. Well, we closed at 1, but after we got through we took the cash, restaurants and everything, all of them, and compared notes, to see what was short. It is liable to happen in those places very often. I never got away before 2 o'clock.

"The Court: Before what?

"A. 2 o'clock in the morning. Never but very seldom, except Sunday.

"Q. Did anybody assist you in the management of this business?

"A. No, sir.

"Q. It was entirely on your own shoulders?

"A. It was entirely thrown upon me. If it was not for me, I would like to have known where the business would be. I think I was there more than my duty, but I was compelled to do it for my own benefit because I have a half interest in it; but I was willing— Four months after I was in the business, I could see what was coming. He was not in there four months when Mr. Barrenstecher got rheumatism; not that I want you to understand, your honor— He wanted to do all he could; he was ambitious; a very good man; but his spirit was willing, and his flesh was weak, as we may say, and it was up to me to pull it out and stay by it, and I have stood all this time; stood not only for everything for months, but stood it all the time. I think I have done more than my duty. I

wouldn't do it for anybody for $250 right now.   We have sold it now, but if I thought I couldn't go back there and get my $250—''

During the life of Chas. Barrenstecher, he and defendant Fritz Strobel contributed their joint and untiring efforts over a period of many years to the upbuilding of the enterprise which culminated in the organization of the Hof Brau.   The services of the one counterbalance the services of the other, but this condition was changed upon the death of Chas. Barrenstecher, when the burden of the entire business fell to the lot of defendant Fritz Strobel.   At a time almost contemporaneous with the death of plaintiff's husband, a disagreement developed between these parties concerning the management of the business which may or may not have been the cause of defendant's determination to draw a salary for his services.   On that phase of the case, defendant gave voice to the following testimony on cross-examination:

"Q. Now, I am going to ask you, Fritz, to tell the court when you first made up your mind you would take a salary out of that business.

"A. When I first made up my mind— That was in my mind, I think, right along.   It was in my mind from the time that I was alone, as far as that is concerned, but I didn't—

"Q. (Interrupting.)   It was in your mind all the time, was it?

"A. Yes.

"Q. Then when did you first conclude you would take this amount of money?

"A. Well, just about the time we commenced to scrap you know; when you brought Mrs. Barrenstecher and bothered me, then I got tired of it.   That is where it commenced.

"Q. Now Mr. Strobel—

"A. (Interrupting.) * *

"Q. Now, Mr. Strobel, as a matter of fact, if it were not for the fact that you and Mrs. Barrenstecher did not agree you wouldn't have taken a salary at any time, would you?

"A. I can't answer that.

"Q. You never intended to take a salary until you got to quarreling with Mrs. Barrenstecher, did you?

"A. I might have been liberal enough, I don't know. If he sees fit, maybe Mr. Mayer wouldn't charge any salary for his services neither, if Mrs. Barrenstecher left him alone, but that is not saying he is not entitled to it. Mr. Mayer might have waived his salary, and maybe I would have waived mine."

Defendant having demonstrated the services rendered to the corporation were valuable, we come finally to consider whether the services were performed under such circumstances as to raise the presumption that compensation would be demanded therefor. Seasonably following the death of Chas. Barrenstecher, F. J. Alexander Mayer was appointed executor of the estate, serving in that capacity during nearly all of the time defendant was rendering the services in hand. Mr. Mayer testified that he knew, while in charge of the estate, that defendant was burdened with the entire management of the Hof Brau; that he inspected the books of the corporation from time to time and found no fault therewith; and that defendant spoke several times regarding a claim for salary, saying, "What do you intend to do?" In answer, Mr. Mayer told defendant that was his business, and if he wanted "anything like that to see his lawyer."

In a letter addressed to Mr. Mayer, doubtlessly written some time during the first part of 1911, though undated, plaintiff employed language which clearly indicated that she expected defendant to charge for his services as manager, as an expert will show: "Now, Mr. Mayer in his Mr. S. [meaning Mr. Strobel]

way of doing, he can place his salary to suit himself and I have never had a statement from you as to the amount of business done during a month, or expense, or but what his salary may eat up most of my profit and as these things are worrying me, I thought it best to write you at once.''

From a review of the record on appeal, we believe the deduction must be made that the services performed by defendant Fritz Strobel were rendered under such circumstances as to raise a fair presumption that all parties interested in the Hof Brau understood that Strobel was to be compensated for his services; at least the circumstances were of such a character that a reasonable person receiving the benefit of defendant's efforts ought to have understood that the same were to be remunerated rather than accepted as a gratuity.

The decree of the lower court is affirmed.

                                                AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.