DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF WYOMING

[OCTOBER TERM, 1916.]

## HJORTH OIL COMPANY v. CURTIS.

(No. 853; Decided March 5th, 1917; 163 Pac. 362.)

BROKERS—FINDINGS—EXCEPTIONS—COMPENSATION FOR NEGOTIATING SALE—EVIDENCE—CORPORATIONS—SERVICES RENDERED BY STOCK-HOLDERS—IMPLIED CONTRACT TO COMPENSATE FOR SERVICES—AGREE-MENT FOR REASONABLE COMPENSATION.

1. In an action by a stockholder to recover compensation for services rendered and expense incurred in the negotiation and sale of company property, his right to compensation being undisputed, a judgment for plaintiff on conflicting evidence as to the rate of his compensation will not be disturbed on appeal.

2. The right of a stockholder in a corporation to recover reasonable compensation for services rendered in negotiating a sale of its property is not invalidated by the fact that the services were performed by him under appointment as a member of a committee, or that he was a stockholder, or assistant secretary of the company when the negotiations were commenced, and it is immaterial whether he performed the services as a broker.

3. When a stockholder of a corporation renders it services by request or authority, a contract is implied to pay the reasonable value of services, unless the circumstances negative such implication as by showing that the services were to be gratuitous.

4. The doctrine denying compensation to directors or other managing officers of corporations in the absence of ex-

press provision or agreement therefor has no application to services not pertaining to their office or regular duties, and if such services are rendered with the understanding that they will be paid for, the law will imply a promise, in the absence of any special agreement, to pay what they are reasonably worth.

ERROR to the District Court, Natrona County; HON. CHARLES E. WINTER, Judge.

Action by Frank E. Curtis against Hjorth Oil Company, a corporation, to recover compensation for services rendered and expenses incurred in the negotiation of a sale of defendant's property. Judgment for plaintiff and defendant brings error. The material facts are stated in the opinion.

*William J. Miles,* for plaintiff in error.

Plaintiff was not employed as a broker to perform the services for which he seeks a recovery; he was not a broker in fact, but an attorney in the employ of defendant. He was also assistant secretary of the company and a stockholder therein. He was working largely in his own interest in negotiating for a sale of the lease. The resolution referred to in the evidence had reference solely to the expenses of plaintiff's trip as a member of a committee. There could be no brokerage contract between plaintiff and defendant, unless authorized by resolution. Contract relations require that the parties be consenting factors and the consent or assent must be manifested by affirmative conduct. (Wood v. Ayers, 39 Mich. 349, 39 Am. Rep. 396; Trever v. Wood, 36 N. Y. 307, 93 Am. Dec. 511; Titcomb v. U. S., 14 Ct. of Cl. 263; Frazier v. Dick, 5 Rob. (La.), 249; Central of Ga. Ry. v. Gortakowsky, 122 Ga. 366, 51 S. W. 469; Bowen v. Hart, 191 Fed. 376; Lord v. U. S. Trans. Co., 128 N. Y. S. 461, 149 App. Div. 437.) Stockholders have no power to contract for their company. (3 Cook on Corporations, 708, 709.) Even though such stockholder owns practically all of the shares. (Sellers v. Greer, 172 Ill. 549; 2 Morawetz on Corporations, Sec. 475, p. 448; 3 Clark & Marshall on Corporations, p. 1905; Bank v. Bank, 4 Clark (Pa.) 125; Cairo v.

Company, 12 Barb. (N. Y.), 27; Flagg v. Manhattan Realty Co., 10 Mich. 413; Beverig v. New York Elevated R. R. Co., 112 N. Y.; Leslie v. Lorillard, 110 N. Y. 519; People ex rel. Marrice v. Powell, 201 N. Y. 194.) The evidence shows that plaintiff was not the procuring cause of the sale. The evidence shows that plaintiff made no impression upon the purchaser. Before a broker is entitled to recover for services he must show that he was the procuring cause of the sale. Merely contributing toward the sale does not constitute him the procuring cause. Ware v. Dos Passos, 4 App. Div. (N. Y.) 32; Alden v Earle, 121 N. Y. 686; Shano v. Sarch, 107 N. Y. S. 26; Marcus v. Kenneally, 19 Miscl. (N. Y.), 517; Sibbald v. Bethlehem Iron Co., 83 N. Y. 383, 32 Am. Rep. 441; Crane v. Miles (Mo. App.), 134 S. W. 52; Ramsey v. West, 31 Mo. App. 676; Lord v. U. S. Transp. Co., 118 N. Y. S. 451, 143 App. Div. 437; Moore & Hill, Inc., v. Brunninger, 34 App. D. C. 86; Sexton v. Goodrich, 131 Wis. 146, 111 N. W. 206; Camp v. Van Stone, 73 Mo. App. 84, 87; Brown v. Shelton (Tex. Civ. App.), 23 S. W. 483.) A broker cannot interpose himself between parties who are already negotiating and thus recover a commission. (Campbell v. Van Stone, supra.)

*B. D. Townsend, H. R. Nichols* and *Fred C. Rabb*, for defendant in error.

It was undisputed that plaintiff performed service for defendant in negotiating the sale, and that he was to receive compensation for such service, and be reimbursed for his expenses. The controversy arises as to the amount of his compensation. The court below found for the plaintiff and the finding and judgment are sustained by the evidence. While admitting that plaintiff was authorized to negotiate for the sale, defendant undertakes to deny that he was authorized to make the sale and that he actually made the sale of the leasehold in controversy. The evidence proved that the services rendered by plaintiff were of far greater value than the amount of the judgment rendered in his favor. It was shown that he had devoted the greater part of three months

working night and day in connection with the transaction and exercised the usual functions and authority of a broker; it was proven that the conduct of the parties after the sale indicated an understanding that plaintiff was to be paid for his services which were in every way satisfactory. Neither the fact that plaintiff was a stockholder in the company, assistant secretary thereof, or attorney, will invalidate his claim for the performance of services outside of his regular official duties, whether he was a broker or not; and irrespective of what the express agreement was as to compensation, the fact that he performed services by request and authority of the board of directors created an implied agreement to pay the reasonable value thereof. He is entitled to reimbursement for expenses. (19 Cyc. 229.) A broker who procures a purchaser is entitled to compensation, even though the sale be completed by the principal. (22 N. Y. Supp. 255.)

*William J. Miles,* in reply.

The brief of defendant in error does not contain a fair statement of the evidence. The argument undertaken with reference to the question of his alleged employment is vague. The sale was in fact concluded by the committee appointed by the board of directors. Defendant in error was acting for himself as an interested stockholder and not for the company. The brief of defendant in error cites no authorities in support of its position.

POTTER, CHIEF JUSTICE.

Frank G. Curtis brought this action against the Hjorth Oil Company, a corporation, to recover the alleged value of his services and expenses in negotiating and making a sale of that company's leasehold interest in a certain tract of land in Natrona county, this state, upon which the company had drilled a productive oil well, and in procuring from the purchasers an agreement to take the oil produced by the company upon land owned by it at the market price. Such services and expenses were alleged to be of the reasonable

value of thirty-five thousand dollars, and it was alleged that no part thereof had been paid except sixty dollars advanced by said company for expenses. On the trial in the district court without a jury it was found that the plaintiff was entitled to recover for his services in negotiating and making the sale aforesaid the sum of ten thousand dollars, as the reasonable value thereof, together with interest thereon at the legal rate of eight per cent. per annum from a specified date, and judgment was rendered in his favor for said sum and interest, aggregating $11,497.80.

The petition alleges that the plaintiff is and during the period mentioned therein was an attorney and counsellor at law and engaged in the practice of his profession in the city of Jamestown, New York, and also in the business of a broker and in the sales of stocks, bonds and other properties, and that he was a stockholder of the defendant. Stripped of all other matter of inducement the petition alleges in substance that the plaintiff undertook the sale of the defendant's interest in the lands aforesaid, and to provide for the sale of oil produced on lands owned by it, at the special instance and request of the defendant, and that the defendant agreed to pay the plaintiff a reasonable sum for his services in addition to his actual expenses in conducting the necessary negotiation for said sale; that pursuant to said agreement the plaintiff made the sale for the sum of seventy-five thousand dollars in cash and 750 shares of the capital stock of a company to be organized by the purchasers, said shares to include 250 shares of seven per cent. cumulative preferred stock and 500 shares of common stock; that the proposed company was organized, and the stock aforesaid, of the value of $35,000 or more, was about to be issued to defendant pursuant to said sale and the terms thereof; that an agreement was procured from the purchasers to take oil from the defendant at the market price for an indefinite period of time; that plaintiff's services and expenses in making said sale and contract were reasonably worth the sum of $35,000.

The answer admits that plaintiff was an attorney and counsellor at law engaged in the practice as alleged, but denies, for want of information, his having been engaged in the business of broker as alleged. It further denies his alleged employment to make the sale or that the sale was made by him, and alleges that the plaintiff was one of defendant's stockholders, and the only agreement with him by the company was to pay him, in addition to his actual expenses, the sum of fifteen dollars per day for such time as he should be actually absent from the city of Jamestown upon any business of the defendant; that the sale aforesaid was made by the defendant itself acting through certain of its officers and stockholders; that plaintiff's only connection therewith was as one of a committee of three stockholders appointed by the board of directors for the sole purpose of acting for it in its corporate capacity and not as brokers or promoters.

The findings of fact were stated in writing substantially as follows: 1. That defendant is a corporation organized under the laws of New York. 2. That plaintiff is and was since prior to January 1, 1913, engaged in practice as an attorney and counsellor at law and in the business of a broker in the sale of stocks and bonds and other properties. 3. That defendant, prior to January 1, 1913, became the owner of a certain leasehold estate in an oil placer mining location upon a certain tract of public land situated in Natrona county, in this state, and continued to be the owner thereof until its sale on April 16, 1913. 4. That subsequent to January 1, 1913, and prior to April 16, 1913, the defendant employed the plaintiff to sell said leasehold interest and agreed to pay him and he agreed to accept a reasonable compensation for his services in negotiating and making such sale. 5. That pursuant to said contract of employment the plaintiff, on April 16, 1913, negotiated and made a sale of said leasehold interest for $75,000 in cash and $50,000 of the common stock and $25,000 of the preferred stock of a corporation to be organized to own said interest. 6. That thereafter and prior to May 10, 1913, the sale was accepted, rati-

fied and approved by the defendant, and its said interest duly conveyed to the purchaser, who then and there paid to the defendant the purchase price aforesaid, viz: $75,000 in cash, and $75,000 par value of the capital stock of the Keystone Oil Company, the corporation organized for the purpose aforesaid, and that the said capital stock so paid to defendant was of a cash value exceeding $25,000. 7. That the sum of $10,000 is a reasonable compensation for plaintiff's said services. As a conclusion of law the court found the defendant to be indebted to the plaintiff in the sum of $10,000, with interest at eight per cent. per annum from June 16, 1913.

The findings concluded with an order for judgment and a recital that all were excepted to by the defendant. Thereafter the defendant filed a statement of its exceptions to the findings and decision, specifying that it excepted to the 4th and 5th finding of fact, that part of the second finding to the effect that plaintiff had been engaged in the business of a broker, the sixth finding so far as it may imply that defendant ratified or approved any sale or alleged sale by the plaintiff acting in the capacity of a broker for defendant, the conclusion of law and order for judgment. It is shown also by the bill of exceptions that a motion for new trial was filed by the defendant stating the following grounds: 1. That the court erred (a) in denying defendant's motion for nonsuit or for judgment at the end of plaintiff's evidence in chief, and (b) in denying defendant's motion for judgment in its favor at the conclusion of all the evidence. 2. That the findings are not sustained by sufficient evidence and are contrary to the evidence. 3. That the evidence is insufficient in law to warrant any finding or judgment in favor of the plaintiff. 4. That the findings are contrary to law.

The case is here on error, with the errors complained of set forth in the petition in error substantially as follows: 1. That the court erred in denying defendant's motion for nonsuit or judgment made at the end of plaintiff's evidence in chief. 2. That the court erred in denying defendant's motion for judgment made at the end of all the evidence. 3. That the court erred in its second, fourth and fifth findings

of fact, in that said findings are not supported by the evidence and are contrary to the facts adduced at the trial.  4. That the decision and judgment are not sustained by and are contrary to the evidence.  5. That the decision and judgment are contrary to law.  6. That the court erred in denying defendant's motion for a new trial.  7. That upon the evidence and the law the judgment should have been in favor of the defendant.

Thus, the question presented is whether upon the evidence and the law applicable thereto the plaintiff was employed and made the sale as alleged and under such circumstances as to entitle him to a reasonable compensation for his services. The evidence is voluminous, comprising several hundred pages of testimony and a large number of exhibits, the latter including, among other papers, the record of the incorporation and the proceedings of many of the meetings of the stockholders and directors of the defendant company, and numerous letters and telegrams relating to the negotiation for the sale of the property in question and other incidental matters, so that our reference to it must necessarily be confined to stating generally the material facts seeming to be established without substantial conflict, or, where the evidence is conflicting, the character thereof and our conclusion as to its effect in this proceeding to reverse the judgment.

The organization of the defendant company was proposed by William Hjorth, a resident of Jamestown, New York, for the purpose of taking over and operating under an oil lease which he had secured covering certain lands in Natrona county in this state, including the quarter section involved in this controversy. The company was incorporated and organized in June, 1912, under the laws of New York, after a stock subscription list had been circulated and signed. Thereupon the lease aforesaid was taken over by the company and it proceeded to operate thereunder. At the organization meeting F. O. Strandberg was elected president of the company, and the said William Hjorth was elected secretary and treasurer. The officers and most of the stockholders, as we understand, resided in or near Jamestown, and the company

had its home office at that place. The original capital stock was $15,000, all of which we understand to have been subscribed. The plaintiff subscribed $1,000 of the capital stock and became the owner of that amount of stock in the company at the time of its organization. He prepared and filed the defendant's articles of incorporation and thereafter and during the period covered by the transaction involved in this controversy acted as legal adviser of the company and seems also to have solicited some of the original subscriptions to the capital stock. He was not at any time a director of the company, nor an officer, except that at a meeting of the directors held on November 13, 1912, he was named in a resolution adopted by them to act as assistant secretary and held that position until February 3, 1913, when another person was selected to act in that capacity. Prior to said November meeting, however, he had written up the proceedings of several of the meetings of the stockholders and directors, signing the same as "Acting Secretary," and at that meeting his acts in so doing were ratified.

Some time in 1912, the exact time not being material, though we understand it to have been in October, the company's operations under the lease aforesaid resulted in a producing well upon the quarter section of land here involved, and there seeming to have been some delay or difficulty in arranging for a disposition of the oil from that well, the plaintiff interested himself in the matter and corresponded and had an interview with a representative of another oil company concerning it prior to January, 1913, but without any definite result. He also corresponded about it with the defendant's representative in the field, in which correspondence the matter of selling the defendant's interest in the tract aforesaid was referred to. The matter of this correspondence is only incidental to the present controversy, and is mentioned here only as showing that the question of selling defendant's interest in the lease upon said tract had been under consideration prior to January, 1913, and the negotiation finally resulting in a sale. Mr. Hjorth, the sec-

retary of the company, wrote from Casper on November 9, 1912, that he had seen a party, naming one of the leading oil companies of the district, about buying for $70,000, that he thought the company could not do any better, and advising a sale at that price. On November 12, the plaintiff wrote Mr. Hjorth from Jamestown, referring to a telegram sent the latter, asking if the party would give them $70,000 for the lease inside of five days, and mentioning a different offer which had been made by another party, and stating as the writer's personal opinion that the stockholders would sell for $70,000 cash, or part cash and the remainder properly secured, to be paid within a reasonable time. In a letter of November 19, 1912, written to the plaintiff by Mr. Hjorth he stated that the party he had referred to would not buy then but would rather wait for another well and would be willing to double the price if they did buy. In a letter dated November 22, 1912, by the plaintiff to Mr. Hjorth the fact was mentioned that the latter's telegram had just arrived, asking if he should give an option on lease for two weeks for $90,000 net, and stating that the telegram would be reported to the meeting that night. And it appears that at a special meeting of the stockholders held on November 23, 1912, they refused to give an option at $90,000 for two weeks and Mr. Hjorth was so advised by the plaintiff in a letter of the same date, in which it was further stated in substance that the sentiment was against giving an option, but there might be an exception in favor of an option for two weeks upon the payment of $5,000, and suggesting that anyone wishing to buy make a flat offer. At the meeting on November 23, 1912, it was voted also to increase the capital stock to one hundred thousand dollars.

Nothing definite having been accomplished as to the sale of defendant's oil or the well aforesaid, or that part of its lease which included the well, the plaintiff was visited at his office in Jamestown early in January, 1913, by Mr. S. S. Cramer of Milwaukee, Wis., who afterwards became one of the purchasers of the defendant's said interest, the other

purchaser being Mr. Wadhams of Milwaukee. These parties were connected with a concern known as the Wadhams Oil Company, with headquarters, as we understand, at Milwaukee. The purpose of Mr. Cramer's visit to Jamestown, as explained in his testimony, was to purchase, if possible, a majority of the stock in the defendant company and to engage some one to do that for him. He called upon the plaintiff at his office in Jamestown to secure his services in acquiring such stock, having been referred to him as the best man to see in that connection. He did not at first advise the plaintiff that he was connected with an oil company, nor does it appear that he knew the latter to be connected in any way with the defendant company. Upon stating the object of his visit the plaintiff informed him that he could not serve him in the matter for the reason that he was assistant secretary and attorney for the company, and sought to discourage any attempt on his part to buy the stock; but in the course of the conversation he suggested to Cramer that he consider the matter of buying the defendant's lease, or that part of it covering the tract upon which its well aforesaid was located, and they discussed that matter several times during the few days that Cramer remained in Jamestown, the plaintiff stating, as his opinion, that the property was worth a quarter of a million dollars. Thereafter considerable correspondence passed between them with reference to the matter, and Cramer submitted some written suggestions to the effect that the defendant company be reorganized so as to provide for $100,000 of preferred stock and $200,000 of common stock and selling one half of the common stock to his company for enough to pay back to the original stockholders of the defendant company the whole amount of their investment in the shape of dividends, and their present holdings to be exchanged for five times the amount in preferred stock, answering which, the plaintiff wrote that the stockholders would not accept what Cramer had suggested but urged that he come to Jamestown forthwith prepared to buy the lease. In response to

that letter Cramer telegraphed the plaintiff that he could not come to Jamestown and suggested that one or three of the directors of defendant company come to Milwaukee with full power to act, to which the plaintiff responded by writing that he doubted if the company would send one or more of the directors to Milwaukee "in view of the policy they have been pursuing," but that he might suggest at the stockholders' meeting to be held soon the advisability of conferring with him. The plaintiff made a report concerning his conference and correspondence with Mr. Cramer at a special meeting of the stockholders on January 24, 1913, and at that meeting the following resolution was adopted:

"Resolved, that Wm. Hjorth and Frank G. Curtis be and they are hereby authorized to go to Milwaukee, Wis., on behalf of this company, to confer with S. S. Cramer and others relative to the disposition of our oil products or lease, and report at the regular annual meeting of the company to be held Feb. 3, 1913."

On the following day, January 25, 1913, the directors held a meeting at which a motion was made and carried to the effect that William Hjorth and Frank G. Curtis be given power to sell the company's lease on Section 33, (the quarter section here involved), using their best judgment, but at a price not less than $75,000. Pursuant to the resolution and authority aforesaid the plaintiff and Mr. Hjorth went to Milwaukee and there conferred with Mr. Cramer and Mr. Wadhams, and made a written report concerning the matter at the annual meeting of the defendant's stockholders held on February 3, 1913. It is unnecessary to refer to the report otherwise than to say that it was stated therein that they had quoted a price for the lease of one hundred thousand dollars cash and one hundred and fifty thousand dollars of eight per cent. preferred stock in a refining company to be formed for the purpose of taking over the lease, and that the conference resulted in their submitting to Wadhams and Cramer the following written proposition upon which the latter asked an option of sixty days:

                                   "Milwaukee, Wis., Jan. 31, 1913.
"Messrs. E. A. Wadhams and S. S. Cramer,
     Milwaukee, Wis.

Gentlemen:

Our Hjorth Oil Co. would sell you quarter section No. 33 which has our well No. 1 upon it for $100,000 cash and $150,000 preferred stock in a corporation to be formed to refine the oil from our property. The proposed corporation to be incoporated at not to exceed $1,200,000. The preferred stock shall draw 8% cumulative dividend and equally participate with common stock on all over 8% paid to common stockholders. The Hjorth Oil Co. shall sell all of its oil in the future to your proposed refinery company for the ruling price of oil and you shall take our oil under these conditions. The Hjorth Oil will agree not to enter into the refining business.

Approved                          Yours very truly,
     Wm. Hjorth                       Frank G. Curtis."

We understand from the evidence that the record of the proceedings at that meeting does not show any action upon said report. But on the day following the meeting the plaintiff wrote to the prospective purchasers that it had been decided at the meeting to give them an option in accordance with "the enclosure," and he testified that an option agreement was prepared and sent to them with the letter. The agreement was returned with the statement that it could not be accepted, but that they had been willing to pay $100,000 in cash and $150,000 in common stock in the new company. An amended option was then sent them by plaintiff providing, as we understand, for a division of the stock payment into part preferred and part common, which does not seem to have been accepted, though the time granted for acceptance was afterwards extended a few days and in the meantime several letters concerning it passed between them and the plaintiff, the latter insisting that the property was fully worth more than the price specified in the option agreement in answer to proposals to pay a less amount, the last letter

of the plaintiff in that connection dated April 10, 1913, and addressed to Mr. Wadhams closing with the following:

"Whereas the option does not so provide, you assured me in your correspondence that if you could decide yes or no before the 21 days expired which we extended to you at $100.00 per day, that you would do so. We hope that you will let us know forthwith if you do not want the property at the agreed price, as we figure the $100.00 a day a considerable loss as compared with our other prospects."

Following the receipt of that letter and referring to it Mr. Wadhams, on April 14, 1913, telegraphed the plaintiff that they assumed a former conversation with the plaintiff a relinquishment of options, and on the same date the plaintiff telegraphed to Wadhams and Cramer asking if they would be at home Wednesday "to confer with us" and to wire reply, responding to which on the same date Wadhams telegraphed the plaintiff an affirmative answer. In the meantime, on April 10, 1913, at a meeting of defendant's directors it had been decided "that a committee of three consisting of F. O. Strandberg, William Hjorth, and Frank G. Curtis, as attorney, go to Milwaukee to confer and close a deal with Wadham and his people." The trip to Milwaukee was delayed a few days, and plaintiff testified that such delay was at his suggestion to await further developments, and on April 15, 1913, another meeting of the directors was held at which a resolution was adopted that Frank O. Strandberg, William Hjorth, and Frank G. Curtis, as a committee of three, be authorized to sell, assign and transfer any of the property, rights or interests of the company in Wyoming for such an amount and on such terms and conditions as said committee, acting jointly, elects, and to sign, seal and deliver the necessary papers.

The committee thus appointed and authorized by these resolutions went to Milwaukee immediately after the meeting of April 15th, and closed the sale with Wadhams and Cramer, which was finally accepted and ratified by the company, as found by the trial court, and on the general terms stated in the findings. It also appears that at a previous

special meeting of the directors held on February 10, 1913, it was resolved that S. S. Cramer be telegraphed to learn if he is authorized to sign an option contract with the company, and if he has such right, then that Frank G. Curtis be authorized to leave for Milwaukee on February 11 to close an option contract with him, the company to get $100,000 in cash for the quarter section in question and as much stock, common and preferred, or common or preferred, as possible, but not less than $150,000 par value; the option agreement to be kept as short as possible, not to exceed 40 days from date of option, and additional 30 days to be allowed if refiners agree to purchase.

The contract for the sale having been agreed upon on April 16, 1913, the stockholders of the defendant company held a meeting at Jamestown on April 18, 1913, at which gratification was expressed over the consummation of the sale and the thanks of the company were extended to Messrs. Strandberg, Hjorth and Curtis, and from the proceeds to be received from the sale it was decided that a dividend of 200 per cent. be declared. All of the correspondence with the purchasers preceding the sale seems to have been carried on for the Hjorth Oil Company by plaintiff; he also acted generally as spokesman for the committee in their conference with the purchasers; and the money for the cash payment was delivered to the company through his hands.

Before closing this recital of the facts the further fact should be mentioned that Wadhams and Cramer had first learned of the defendant's property through an agent sent by them to investigate the field in which the property is located, who had reported about this property, and that one of the defendant's representatives in the field had named $100,000 as a price for which the company's interest might be purchased, and, further, said agent's opinion that the property would be cheap at that price, though those facts do not seem to have been communicated to the plaintiff. And that report of his agent was the cause of Cramer's going to Jamestown in January, 1913.

There seems to be some conflict in the evidence as to whether the plaintiff, prior to the meeting of January 24th, had mentioned to any officer of the company the fact that he had met Cramer and was corresponding with him about his buying the property, but, in our view of the case that matter is not very material.

The only material point upon which there is a substantial conflict is whether there was an understanding that plaintiff was or was not to receive compensation for his services or what was said concerning it. The plaintiff testified that after the adoption of the resolution at the January meeting authorizing him and Mr. Hjorth to go to Milwaukee to confer with Cramer and others, some one present asked what he was going to charge and that he replied by saying: "I will go for $15 a day and expenses if I do not close a deal, but if I close a deal I will expect to be paid what is right"; that Mr. Hjorth then rose and said that he would go for nothing except his expenses, and that he, the plaintiff, then said: "I will go for nothing except my expenses unless I close a deal. If I close a deal I will expect what is right, for I anticipate the laborer is still worthy of his hire." And he is corroborated in this by two of the stockholders who were present at the meeting, one of whom had offered the resolution aforesaid. In passing it might be said that Mr. Hjorth had been representing the company in the field, and was receiving a salary of $150 a month when away from home. Most of the witnesses for defendant, who were examined on the subject, admitted that something was said at the meeting aforesaid about plaintiff's compensation, but testified that what was said or what they understood was that plaintiff was to receive $15 a day, his usual fee when away from home as added by some of the witnesses, in addition to expenses, if a deal was closed or a sale made, and such witnesses generally denied that plaintiff, at such meeting, made the statement aforesaid about a laborer being worthy of his hire, some of them testifying that the statement was made at a meeting held after the sale.

The matter of plaintiff's compensation does not appear to have been mentioned at any subsequent meeting until after the sale, but the plaintiff relies upon the resolution adopted at the January meeting aforesaid and what was then said with reference to what he would charge as showing his employment to negotiate the sale and his right to reasonable compensation for his services, and defendant's evidence to the effect that plaintiff was to be paid only $15 a day is based upon what occurred and was said at such meeting, and the general effect of its evidence is that from what was then said it was understood that plaintiff was to receive compensation for his services under the appointments aforesaid, if a sale was made, but that it was to be $15 a day. And it appears that in an action brought in New York by the plaintiff to recover for his services, which we understand to have been dismissed upon or before the bringing of the suit here, the defendant filed an answer alleging in substance that Strandberg, Hjorth and Curtis were appointed a committee to consummate a sale of the property which had been under negotiations for some time, upon the understanding and agreement that said committee were acting in their own behalf and for the other stockholders and that no compensation was to be paid them except their traveling expenses unless the sale was consummated, in which event there was to be paid to Curtis fifteen dollars per day for the time actually spent, in addition to such expenses; a copy of that answer having been introduced in evidence by the plaintiff without objection.

The only evidence as to the reasonable value of plaintiff's services is his testimony fixing it at "$35,000 and more," and stating the basis or percentage upon which it was computed at that amount, and explaining the reasons therefor, including the time occupied, the advantage to the company from the sale and the provision in the contract for disposing of its oil, and other matters considered in estimating such value. The defendant offered no evidence on the subject.

The contention of the plaintiff is that he was employed by the defendant as a broker to negotiate and make the sale and that he acted in that capacity, entitling him to a reasonable compensation for his services. Defendant's contention is, first, that the plaintiff was not so employed, but that the only authorized service rendered by him in connection with the sale was as a member of a committee of stockholders, and, second, that he was not the procuring cause of the sale and did not discover or produce the buyers, and, therefore, performed no service as a broker entitling him to compensation as such.

There is sufficient evidence to sustain the finding that the plaintiff, in addition to his law practice, was engaged in the business of a broker in the sale of stocks, bonds and other properties, but that fact does not seem to us to be very material, except as showing a reason for the plaintiff's employment or appointment to negotiate and make the sale. The fact of his experience in such matters together with the fact that he had been in correspondence with the parties, had met one of them, and proposed their purchase of the property, may have been considered in appointing him as one of a committee to confer with the prospective purchasers and with authority to negotiate and consummate the sale. In our view of the case, under the issues and upon the evidence, the right of the plaintiff to compensation for his services in connection with the sale does not depend upon his having been employed strictly or distinctively as a broker, and for that reason it is not essential to his recovery of a reasonable compensation that he should have produced the buyers or been the sole procuring cause of the sale, although we are inclined to the opinion that if his employment should be considered as calling for his services strictly as a broker the evidence would be sufficient to sustain a finding to the effect that he had produced the buyers and was the procuring cause of the sale, within the rule under which those conditions are to be considered in determining a broker's right to compensation.

While the petition alleges that the plaintiff was engaged in the business of a broker, it is not alleged, at least not directly, that he was employed or made the sale in that capacity, nor do the findings state that he was so employed or that the sale was made by him as a broker. On the contrary, the petition alleges in substance as to the employment and sale merely that at the special instance and request of the defendant the plaintiff undertook the sale of the property and to provide for selling defendant's oil, for which the defendant agreed to pay him a reasonable sum, and that pursuant to said agreement he made the sale. Thus omitting to allege that he undertook or made the sale as a broker or in any particular or stated capacity. And clearly, he might have undertaken the sale at the special instance and request of the defendant under his appointment as a member of a committee appointed for that purpose, and we think the evidence shows that he did so undertake the sale, that is to say, he continued the negotiations as a member of such committee under the authority vested in him by such appointment and finally entered into the contract of sale pursuant to such appointment, although acting jointly with the other committee member or members in his conferences with the purchasers and in concluding the contract of sale, and may have consulted with them and from time to time with the directors respecting the intervening correspondence carried on between him and the purchasers. And the findings, although stating in one paragraph that the plaintiff had been engaged in the business of a broker, state as to his employment merely that he was employed to sell the property, without stating the capacity in which he was employed.

As we understand and construe the petition and findings, therefore, the right of the plaintiff to recover the reasonable value of his services is not thereby limited to services rendered under an employment distinctively or strictly as a broker, but will sustain the judgment if upon the law and the evidence the plaintiff is entitled to recover at all for his services renderd under his appointment aforesaid. And we deem it unnecessary to determine whether the evidence shows

or is sufficient to show that he was employed or that the property was placed in his hands as a broker. That it was understood that the plaintiff was to receive compensation for his services is, we think, made clear by the evidence, the only substantial controversy in that respect having reference to the amount of such compensation; the plaintiff claiming that he was to be paid a reasonable compensation, or "what is right," and the defendant claiming that it was limited to fifteen dollars per day. The trial court determined the conflict in the evidence as to that matter in plaintiff's favor, and as there is sufficient evidence to sustain such finding the case must be considered by this court upon that view of the evidence, viz: that the agreement or understanding was that the plaintiff should receive a reasonable compensation for his services. No objection is here raised as to the amount of the recovery, nor was it challenged as excessive by the motion for new trial. It is at least doubtful whether the finding as to the amount should be considered as having been excepted to, for, although it is stated at the conclusion of the findings that all were excepted to, such finding is not mentioned in the written statement of the defendant's exceptions, a paper not required by our practice, but evidently filed to clearly state in the record the particular findings to which the defendant excepted. However, the finding as to the amount was not complained of in the motion for new trial, at least not in the proper way to present the question of error in amount of recovery to the trial court. The only grounds of the motion referring to the findings or judgment are that the findings are not sustained by sufficient evidence; that they are contrary to law; and that the evidence was and is insufficient in law to warrant any finding or judgment in favor of the plaintiff or against the defendant. And, as held in Syndicate Improvement Co. v. Bradley, 7 Wyo. 228, that is insufficient to present the question of error in the amount of recovery to the district court or as ground for reversal in this court.

His services, however, were such as are usually performed by a broker or agent in the sale of property belong-

ing to another, and that he should render that kind of service was clearly contemplated by his appointment. And it appears to have been largely the result of his efforts that the sale was finally made for the price and on the terms stated. Hence, under the finding of the court upon the conflicting evidence aforesaid, he is entitled to receive and recover what his services were reasonably worth, unless prevented therefrom by the fact that the services were performed under an appointment as member of a committee or that he was a stockholder in the company, and, when the negotiations were commenced and the original appointment made, the assistant secretary. But his right to such compensation, under the circumstances of the case, is not invalidated by either of those facts or all combined, nor would the law deny such right if he had remained assistant secretary through the entire period of the negotiations and until the sale was made.

It is well settled that when a stockholder, who is not an officer or director, renders a service to the corporation by proper request or authority a contract is implied to pay the reasonable value of his services, unless the circumstances negative such implication, as by showing that the services were to be gratuitous. (2 Thomp. on Corp. Sec. 1730; Goodin v. Dixie-Portland Cement Co., (W. Va.) 90 S. E. 544; Fitzgerald Const. Co. v. Fitzgerald, 137 U. S. 98; 10 Cyc. 900, 935, 1034; Cheeney v. Lafayette, B. & M. Ry. Co., 68 Ill. 570, 18 Am. Rep. 580; Holder v. Lafayette, B. & M. Ry. Co., 71 Ill. 106, 22 Am. Rep. 89.) And by the great weight of authority such a contract may be implied in favor of a director or other officer as to services outside the scope of his official duty. (2 Cook on Corporations, Sec. 657; 3 Clark & Marshall on Priv. Corporations, Sec. 671; Montana Tonapah Min. Co. v. Dunlap, 196 Fed. 612; Dunlap v. Montana Tonapah Min. Co., 192 Fed. 714; Huffaker v. Krieger's Assignee, 107 Ky. 200; Paine v. Kentucky Refining Co., 159 Ky. 270; Santa Clara Min. Association v. Meredith, 49 Md. 389; National Loan & Inv. Co. v. Rockland Co., 94 Fed. 335; Barenstecher v. The Hof Brau, 67

Oreg. 194, 135 Pac. 518; Apsey v. Chattel Loan Co., 216 Mass. 364; In re Knox Automobile Co., 229 Fed. 241; and cases cited in note to Lowe v. Ring, 3 Ann. Cas. 731, 734, and note to Winfield Mtg. &c Co. v. Robinson, Ann. Cas. 1915A, 451, 454.) And that seems also to be the rule in New York. (Bagley v. Carthage &c R. Co., 165 N. Y. 179, 58 N. E. 895.)

We find the rule as to services rendered by one who is only a stockholder well stated in Gooding v. Dixie-Portland Cement Co., supra, as follows:

"The principle underlying the rule respecting directors is that they are trustees for the stockholders, and that in the absence of express contract they should not be permitted to recover for services rendered in the performance of the ordinary duties pertaining to their offices upon any implied contract therefor; but the reason for this rule is not generally applicable to stockholders. They stand in no fiduciary relation to the corporation, and we hold, with the great weight of authority, that when the circumstances of the employment do not negative such implication, and the stockholder is called upon by corporate authority to perform some special service, whether of an official character or otherwise, a contract is raised by implication to pay him what his services are reasonably worth."

In Clark and Marshall on Corporations, it is said in substance that while the directors of a corporation are not entitled to salary or other compensation when performing nothing more than the usual and ordinary duties pertaining to their office, in the absence of an express provision or agreement for compensation when the services are performed, such rule applying also to directors serving in an official capacity, the rule, by the weight of authority, does not apply to services rendered by a director, president, vice-president or other managing officer, as a mere attorney, broker, or agent, or in a purely ministerial capacity, or otherwise outside of the usual and ordinary duties of his office; and that by the overwhelming weight of authority the doctrine denying compensation to directors and other

managing officers, in the absence of express provision or agreement therefor, has no application to services not properly pertaining to their office, but rendered by them outside of their regular duties, and that if such services are rendered at the request of the corporation or the board of directors, with the understanding that they are to be paid for, the law will imply a promise, in the absence of any special agreement, to pay what they are reasonably worth. And, further, that the rule denying such compensation, in the absence of express provision or agreement therefor, does not apply to ministerial officers and employes who are not directors, and have no control over the property and funds of the corporation, even though they may be stockholders; "and if such an officer or employe is elected or appointed to perform valuable services for the corporation under circumstances indicating intention and expectation of payment, but without any express contract, the law will imply a promise on the part of the corporation to pay a reasonable compensation." (Section 671, pages 2050, 2053, 2055.)

In National Loan & Inv. Co. v. Rockland Co., supra, Circuit Judge Sanborn, speaking for the U. S. Court of Appeals for the Eighth Circuit, discusses the rule as to directors and officers, and concludes as follows:

"Some authorities have gone so far as to hold that officers of a corporation, who are also its directors, cannot recover for the discharge of their duties unless their compensation is fixed by a by-law or by a resolution of the board before their services are rendered. * * * * We are unwilling to hold that such officers should be deprived of all compensation because the amounts of their salaries were not definitely fixed before they entered upon the discharge of their duties. A thoughtful and deliberate consideration of this entire question, and an extended consideration of the authorities upon it, has led to the conclusion that this is the true rule: Officers of a corporation, who are also directors, and who, without any agreement, express or implied, with the corporation or its owners, or their representatives, have voluntarily rendered their services, can recover no back pay

or compensation therefor; and it is beyond the powers of the board of directors, after such services are rendered, to pay for them out of the funds of the corporation, or to create a debt of the corporation on account of them. (Citing cases.) But such officers, who have rendered their services under an agreement, either express or implied, with the corporation, its owners or representatives, that they shall receive reasonable, but indefinite, compensation therefor, may recover as much as their services are worth; and it is not beyond the powers of the board of directors to fix and pay reasonable salaries to them after they have discharged the duties of their offices."

In the Maryland case above cited, Santa Clara Mining Association v. Meredith, after stating the general rule as to the necessity for an express contract to entitle a director or president of a corporation to recover compensation for services within the line and scope of his duty as such, the court say: "But if a president or director of a corporation renders services to his corporation which are not within the scope of, and are not required of him by, his duties as president, or director, but are such as are properly to be performed by an agent, broker or attorney, he may recover compensation for such services upon an implied promise."

In Huffaker v. Krieger's Assignee, supra, directors were held entitled to compensation for their services in disposing of the property of the corporation, through which the corporation was relieved of its embarrased financial condition, and enabled to pay its debts and a considerable dividend to the stockholders; it being held that such services did not pertain to the ordinary duties of the office of director and a contract was implied to pay for them; it appearing that to effect the sale the directors had been required to expend large amounts from their personal means, to travel to distant cities, and remain there for months. And in Paine v. Kentucky Refining Company, supra, it appeared that a director had been appointed a member of a committee to audit and investigate a great mass of books and accounts of the corporation, and eighteen subsidiary companies, in an effort to

settle a dispute between the corporation and its general manager, the other members of the committee being salaried officers, leaving practically all the work to the unsalaried director aforesaid, who was an experienced accountant, and he was entitled to recover a reasonable compensation for such service as upon an implied promise to pay.

If a director or managing officer is permitted to recover upon an implied contract a reasonable compensation for services rendered outside of his official duties, it must certainly be true that one who does not hold such official position, but is merely a stockholder, or if he be also an assistant secretary, may likewise recover a reasonable compensation for his services when called upon by corporate authority to perform them, and especially when it has been agreed or understood that he was to be paid for such services. The plaintiff was not in fact assistant secretary at the time of the sale nor during the latter and greater part of the period of the negotiations, but there is nothing in the evidence to show that the duties of that position were other than merely ministerial, and clearly they did not include the carrying on of negotiations for and selling valuable property of the corporation. Something is said in the brief about the plaintiff, as assistant secretary, being a salaried officer, but as we recall the evidence he was paid for his service in that capacity only the sum of fifteen dollars per month.

We have thus considered the case upon its merits under the evidence and the findings and the exceptions to the findings, notwithstanding that we have failed to find in the bill of exceptions anything to show an exception to the overruling of the motion for new trial, although the journal entry of the overruling of the motion in the record outside the bill shows an exception. But the question was not raised or suggested by counsel. For the reasons aforesaid we are of the opinion that the judgment must be affirmed, and it will be so ordered.                *Affirmed.*

BEARD, J., concurs.

SCOTT, J., did not sit.