THE CITY OF CHICAGO et al.

v.

EUGENE ·H. FISHBURN.

*Opinion filed February 20, 1901.*

MUNICIPAL CORPORATIONS—*limit on municipal indebtedness must be based on "assessed" value.* The limit upon municipal indebtedness, imposed by the constitution and repeated in the City and Village act, prohibits the incurring of an indebtedness beyond five per cent of the "assessed value" of taxable property therein, notwithstanding the provision of the Revenue act of 1898 requiring the assessor to enter in his books both the full value and the assessed value.

APPEAL from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

CHARLES M. WALKER, Corporation Counsel, and COLIN C. H. FYFFE, (SHOPE, MATHIS & BARRETT, of counsel,) for appellants:

That portion of the last paragraph of section 18 of the Revenue law of 1898 which attempts to change the law with reference to the limit of municipal indebtedness is unconstitutional, because not embraced within the title of the act. No act of the legislature can validly embrace more than one subject, and that shall be expressed in the title.  Const. of 1870, art. 4, sec. 13.

The title of an act defines its scope.  It can contain no valid provision which is not germane to the subject there stated.  Sutherland on Stat. Const. secs. 101, 102; *People* v. *Mellen,* 32 Ill. 131; *Lockport* v. *Gaylord,* 61 id. 279; *People* v. *Deaconesses,* 71 id. 229; *Railway Co.* v. *Lake View,* 105 id. 207; *Welsh* v. *Post,* 99 id. 471; *Dolese* v. *Pierce,* 124 id. 140; *Donnersberger* v. *Prendergast,* 128 id. 229; *People* v. *Blue Mountain Joe,* 129 id. 326.

The last paragraph of section 18 of the Revenue act of 1898 being void, the limit of indebtedness for cities in Illinois is five per cent on the actual value of the taxable

property therein, as ascertained by the last previous assessment for State and county taxes. 1 Starr & Cur. Stat. 1896, chap. 24, art. 5, sec. 1, par. 5, p. 691.

The limitation on municipal indebtedness in the City and Village act (chap. 24, art. 5, sec. 1, par. 5,) is a rescript of the limitation imposed by section 12 of article 9 of the constitution of 1870, and the words, "value of the taxable property therein to be ascertained by the last assessment for State and county taxes," can have no other meaning than the actual value of such property which is shown by the last assessment. The act of 1898 expressly requires that the fair cash value of property shall be ascertained by the assessing officers and set down in the assessment books.

An assessment of property is the fixing of its value by the assessor. It consists in the descriptive lists and the estimate of the value of property subject to taxation. *Felsenthal* v. *Johnson,* 104 Ill. 25; *Wells* v. *Smyth,* 55 Pa. St. 159; *Geren* v. *Gruber,* 26 La. Ann. 694; *Bratton* v. *Mitchell,* 1 W. & S. 310; *Lebanon* v. *Railway Co.* 77 Ill. 541; Black on Tax Titles, (2d ed.) sec. 89.

The valuation of property for purposes of taxation is a judicial act. *Porter* v. *Railroad Co.* 76 Ill. 595; *Railroad Co.* v. *Stookey,* 122 id. 362; *Keokuk Bridge Co.* v. *People,* 161 id. 140; *Hager* v. *Reclamation District,* 111 U. S. 710; Cooley on Taxation, (2d ed.) 409, 788.

Under the act of 1898 the only process which partakes of the character of an assessment is the judicial act of the assessing officials in ascertaining the "fair cash" or "actual" value of taxable property. Assessing officials elected or appointed in the manner provided by law have sole authority to fix such valuation of property. *People* v. *Iron Co.* 89 Ill. 116; *Spencer* v. *People,* 68 id. 512; *Felsenthal* v. *Johnson,* 104 id. 22; *Humphreys* v. *Nelson,* 115 id. 45; *Keokuk Bridge Co.* v. *People,* 161 id. 139.

A legislative enactment which attempts to fix a valuation of property for taxation or debt limitation is void.

*Assessment Board* v. *Railroad Co.* 59 Ala. 551; *In re Taxation of Mining Claims,* 9 Col. 635; *People* v. *Hastings,* 29 Cal. 450; *Slaughter* v. *Louisville,* 89 Ky. 112; Cooley on Taxation, (2d ed.) 176, 410.

Valuation means an estimate of the actual or fair cash value of property. (Anderson's Law Dic.; Bouvier's Law Dic.) Accordingly, a constitutional direction to ascertain the valuation of property, such as is contained in section 1 of article 9 of the constitution of 1870, imposes the duty of ascertaining and declaring the actual cash value. (*Railroad Co.* v. *Stookey,* 122 Ill. 361.) And this is the universal rule for the valuation of property for purposes of taxation. Welty on Assessments, secs. 130, 136; *State* v. *Collector,* 24 N. J. L. 188.

ISHAM, LINCOLN & BEALE, for appellee:

That part of section 18 of the Revenue act of 1898 referring to limitation of indebtedness is not in violation of that part of section 13 of article 4 of the constitution providing that no act "shall embrace more than one subject and that shall be expressed in the title," because limitation of municipal indebtedness is so closely related to and connected with the subject of assessment of property that it is germane to and a part of that subject. As to the character of relationship which will render a provision "germane" to a general subject expressed in the title of an act, see *Railroad Co.* v. *Gregory,* 15 Ill. 20; *Supervisors* v. *People,* 25 id. 181; *O'Leary* v. *County of Cook,* 28 id. 534; *People* v. *Deaconesses,* 71 id. 229; *Abington* v. *Cabeen,* 106 id. 200; *People* v. *Hazelwood,* 116 id. 319; *People* v. *Blue Mountain Joe,* 129 id. 370; *McGurn* v. *Board of Education,* 133 id. 122; *Ritchie* v. *People,* 155 id. 98; *Manchester* v. *People,* 178 id. 285; *Bobel* v. *People,* 173 id. 19; *Boehm* v. *Hertz,* 182 id. 154.

As the part of section 18 in question is germane to the subject expressed in the title of the act it does not violate the prohibition of section 13 of article 4 of the constitution, prescribing that "no law shall be revived or

189—24

amended by reference to its title only, but the law re-
vived or the section amended shall be inserted at length
in the new act," for the clause does not purport to amend
any prior law, and its amendatory effect, if any, is merely
an incidental effect of subject-matter comprehended with-
in the title. *People* v. *Wright,* 70 Ill. 388; *School Directors* v.
*School Directors,* 135 id. 464; *People* v. *Knopf,* 183 id. 410.

The constitution does not require assessments for tax-
ation ·to be of the value, but merely that they shall be
according to value, so that each person shall be taxed
in proportion to the value of his property. Assessments
of one-fifth the full value fully satisfy the constitution,
because within the principle of uniformity. Const. of
1848, sec. 2, art. 9; Const. of 1870, sec. 1, art. 9; *Darling* v.
*Gunn,* 50 Ill. 424; *Bureau County* v. *Railway Co.* 44 id. 229;
*Railway Co.* v. *Boone County,* id. 240; *People* v. *Salomon,* 46
id. 333; *Railway Co.* v. *Livingston County,* 68 id. 458; *Adsit*
v. *Lieb,* 76 id. 198; *Law* v. *People,* 87 id. 385; *Keokuk Bridge
Co.* v. *People,* 161 id. 514.

This court has frequently recognized, and to secure
uniformity has approved and enforced, the custom of
assessing property at from one-fifth to one-half of its
real value, and assessments thus made have hitherto
furnished the court with the basis for ascertaining the
limited amount. (See cases last above cited.) The long
continued and unchallenged practice, acquiesced in by
all the departments of government, of making the as-
sessment at much less than actual value, and of adopting
it, when so made, as the basis for taxation and limita-
tion of municipal indebtedness, is a fact which should be
given great weight by the court in favor of the construc-
tion of the charter provision contended for by appellee.
*Railway Co.* v. *Boone County,* 44 Ill. 240; *Bunn* v. *People,* 45 id.
397; *People* v. *Lowenthal,* 93 id. 191; *People* v. *Fidelity Co.* 153
id. 25; *People* v. *Thompson,* 155 id. 451; *People* v. *Hutchinson,*
172 id. 486; *People* v. *Board of Supervisors,* 100 id. 495; *Boehm*
v. *Hertz,* 182 id. 154,

WILSON, MOORE & MCILVAINE, also for appellee:

In the construction of a statute the main consideration is to ascertain and give effect to the intention of the legislature. *Railroad Co.* v. *People*, 154 Ill. 566.

Every technical rule as to the construction or force of particular terms must yield to the clear expression of the paramount will of the legislature. *Wilkinson* v. *Leland*, 2 Pet. 662.

Statutes must be interpreted according to the intent and meaning, and not always according to the letter. A thing within the intention is within the statute though not within the letter, and a thing within the letter is not within the statute unless within the intention. *Perry County* v. *Jefferson County*, 94 Ill. 214.

The same rule is applied to the constitution. *Hills* v. *Chicago*, 60 Ill. 90; *Jarralt* v. *Moberly*, 103 U. S. 586; *Prigg* v. *Commonwealth*, 16 Pet. 612; *Scott* v. *Sanford*, 19 How. 405; *United States* v. *Fisher*, 2 Cranch. 358; Cooley's Const. Lim. (2d ed.) 55; 6 Am. & Eng. Ency. of Law, (2d ed.) 921.

We contend that the disputed provision of the Revenue act of 1898 is a valid exercise of legislative power, and a proper part of the statute and sufficiently described in its title. Assuming in the first instance, however, that said provisions were dropped from the act of 1898, we contend that the effect of the limitation of indebtedness in the constitution would be the same. Section 12 of article 9 relates to assessed value, and expressly puts the debt limit on the same footing with the tax to pay such debt. The legislature is not forbidden by section 12 of article 9 of the constitution to adopt one-fifth of the actual value, instead of the full value, as the basis of tax levies and limitations, as long as the correct proportion is observed, as required by sections 1 and 10 of the same article. The principal requirement of the contitution as to taxation is that it shall be uniform, and to that end a uniform basis is provided for. To secure uniformity the basis need not be, and is therefore not required to

be, the actual value, and the legislature has discretion to select the proportion.

On the general subject of uniformity this court held, under the constitution of 1848 as of that of 1870, that if property, generally, is assessed on a proportionate basis instead of actual value the requirements of the constitution were satisfied, and that each citizen was entitled to the same privilege, for the sake of uniformity. *Railway Co.* v. *Boone County*, 44 Ill. 240; *Darling* v. *Gunn*, 50 id. 424.

In the cases of *Bureau County* v. *Railroad Co.* 44 Ill. 229, and *Railroad Co.* v. *Boone County*, id. 242, it was held that the constitutional requirement in reference to the valuation of property for taxation was based upon the required uniformity; that when it was uniformly assessed the demands of the constitution were answered.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Upon a bill of complaint filed by appellee, Eugene H. Fishburn, a tax-payer of the city of Chicago, the superior court of Cook county perpetually enjoined appellants, said city of Chicago, its mayor, comptroller and clerk, from issuing bonds of said city to the amount of $686,000. The bonds were about to be issued under authority of two ordinances, set forth at length in the bill, for the purpose of building new bridges. No question was raised as to the form or passage of the ordinances, nor was it claimed that they were an improper exercise of municipal power if the city could incur the contemplated indebtedness for any purpose. The ground upon which the injunction was asked was, that the city had reached and passed the constitutional and statutory limit of municipal indebtedness and had no power to incur further indebtedness or issue additional bonds.

The evidence showed that the fair cash value of all the taxable property in the city for the year 1899, determined by the assessors and set down in the column

headed "Full value," as equalized by the county board of review and the State Board of Equalization, was $1,-725,982,095, and one-fifth part thereof, ascertained by the assessors and set down in the column headed "Assessed value," as so equalized, was $345,196,419. The indebtedness of the city was $18,565,157.65, exclusive of $4,517,000 of bonds of the city issued in aid of the World's Columbian Exposition, and $3,250,000 of water certificates payable solely out of the net receipts of the city water works. The question upon which the decision of the case hinges is, whether, in ascertaining the value of the taxable property of the city by the last assessment, the limit of indebtedness is to be based upon the full value as determined by the assessors, or upon the assessed value, which is one-fifth of the full value. Whether the obligations of the city in the form of bonds issued in aid of the World's Columbian Exposition should be included in the sum of existing indebtedness is immaterial, for the reason that the indebtedness of the city exclusive of such bonds, and conceded by appellants, exceeds five per cent of said assessed value, and if they are included and the proposed issue of bonds added, the indebtedness will be very much less than five per cent of the full value.

The eminent counsel for the respective parties have dwelt, on the one side, upon the necessities of the city and the insufficiency of its revenues to secure the public safety, convenience and welfare, as requiring the proposed issue of bonds, and on the other side, upon the terrors of the tax-payers and the dread possibilities of municipal obligations and individual bankruptcy overhanging them if the construction contended for by appellants should be adopted. If the city has power to issue the bonds, the question of issuing them and building the proposed bridges is a matter resting entirely within the discretion of its legislative body, with which we have nothing to do. If the city has no such power, the argument of convenience can only apply to the policy and

wisdom of the limitation imposed by the constitution and statute, and cannot in any manner affect its validity. The errors assigned by appellants must be determined by deciding what the power of the city is, and that can only be done by construction of the constitutional and statutory provisions on the subject.

The provision of the constitution limiting the power of cities to incur indebtedness is found in section 12 of article 9, as follows: "No county, city, township, school district or other municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness. Any county, city, school district, or other municipal corporation, incurring any indebtedness as aforesaid, shall before, or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same." In paragraph 5 of section 1, article 5, of the act for the incorporation of cities and villages, the legislature enacted in statutory form, in connection with the grant to municipalities of the power to borrow money, the same limitation and the provision for the collection of an annual tax, and in the same language as the constitution. This limitation in the constitution and statute is based upon a valuation to be ascertained by the assessment for taxation, and the constitution makes provision for taxes and assessment in section 1 of said article 9, as follows: "The General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be

elected or appointed in such manner as the General Assembly shall direct, and not otherwise." The statute for the assessment of property now in force provides that the assessors shall determine the fair cash value of property and set down such value in a column to be headed "Full value," and shall set down one-fifth part thereof in another column, to be headed "Assessed value," and all taxes are to be apportioned, computed and spread upon the assessed value so set down. If the value of the taxable property fixed as a basis for the limitation of indebtedness in the constitution is the value ascertained and set down for the purpose of apportioning and extending State and county taxes then the decree was right, but if it means the full value which the statute now requires to be set down in the other column, and to be determined by the assessor in the process of reaching the assessed value, then the city may lawfully issue the bonds.

In construing the provision of the constitution, the object to be attained is to ascertain and give effect to the intent of the people in adopting it, and this is to be done by ascertaining the sense of the words used. (*Hills v. City of Chicago*, 60 Ill. 86; Cooley's Const. Lim. 55; 6 Am. & Eng. Ency. of Law,—2d ed.—921.) The meaning of the term "assessment," in connection with taxation, is well understood. It is an official valuation of property for the purpose of fixing the proportion of taxes which each one shall pay. Judge Cooley, in his work on the Law of Taxation, (p. 258,) defines it as follows: "An assessment, strictly speaking, is an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district. As the word is more commonly employed, an assessment consists in the two processes of *listing* the persons, property, etc., to be taxed, and of *estimating* the sums which are to be the guide in an apportionment of the tax between them." By our constitution the assessment is a valuation to be determined according to the

discretion of persons elected or appointed in such manner as the General Assembly shall direct. It does not provide for a fixed or arbitrary standard of value, and we have constantly held that the valuation for the purpose of taxation is committed to the discretion of the assessor. It must be determined by him and cannot be fixed by the legislature, which, however, are required by the constitution to enforce the provision that every person or corporation shall pay a tax in proportion to the value of his, her or its property. The intent of the people was that revenue should be provided by levying a tax according to valuation, to be ascertained by some person or persons elected or appointed for that purpose, so that there should be uniformity and equality between the owners of property and the different subjects of taxation. The statute in force when the constitution was adopted required an assessment of property at its actual value, and the statute continued to so require up to the act of 1898, which is now in force; but it was common knowledge that under such statutes property was not assessed at its full value. In *Bureau County* v. *Chicago, Burlington and Quincy Railroad Co.* 44 Ill. 229, and *Chicago and Northwestern Railway Co.* v. *Boone County,* id. 240, this court took notice of that practice as being long uniform, unchallenged, and recognized by the authorities having special charge of the revenue of the State. When the constitution was adopted no valuation of property in any assessment for State or county taxes had ever been made except the proportionate value fixed by the assessor, and none was made afterward up to 1898. The assessor had always adopted some proportionate basis of value, and while it was necessary for him to determine the full value in order to take a certain proportion or share as the assessed value, he set down the assessed value only. The provision of the present statute is that he shall set down such full value in a column prepared for that purpose, as a part of the process of determining the assessed value

by a fixed proportion or part thereof. Under previous constitutions the rule adopted by assessors to take some share of the real value of property as its value for taxation had grown into a custom sanctioned by every department of the government and recognized by this court, and, unquestionably, the provision in question referred to the value so fixed for the purposes of taxation. The meaning of a constitution does not change from time to time. The present law is in accord with the previous custom, but enforces uniformity by requiring the full value to be set down and a fixed share to be taken. We do not think that the requirement that the assessors shall set down the full value and take a fixed share thereof as the assessed value can be held to change the meaning of the constitution that the limit is to be determined by the assessed value. We think the constitution means that the limit of municipal indebtedness shall be computed upon and shall not exceed five per cent of the official estimate of the assessors for the preceding year as a basis for the apportionment of State and county taxes. That is the amount which is set down in the column under the head of "assessed value."

But it is urged by counsel for appellants that the word "value," used in the constitution, must mean actual value; that any attempt of the legislature to direct assessing officers to take one-fifth of such value as the assessed value is void, and that, inasmuch as the statute provides for a determination of such actual value, it must be held to be a basis of the limitation. The central and dominant idea of the constitution in the assessment of property for taxation and in the payment of taxes is uniformity and equality, but we find no provision which prevents the legislature from fixing the assessed value at less than full value. Justice and uniformity between tax-payers may be as well secured by a proportionate basis, and while the value cannot be fixed by the legislature, it is within the legislative power to enforce the provision

for uniformity by any proportionate rule. Assessors had always assessed property at a part, only, of the full value, and we see no reason why the legislature may not prevent the varying methods by which property was assessed unequally between different counties and municipalities of the State, by enforcing a fixed and uniform rule. So long as the correct proportion between the different subjects of taxation is maintained there is no language of the constitution which limits the legislative power to prescribe a basis for the action of the assessors.

We conclude that the limit imposed by the constitution, repeated in the act under which the city of Chicago is organized, prohibits the incurring of an indebtedness beyond five per cent of the assessed value of the taxable property therein, and as that limit has been reached and passed, the decree of the superior court was right.

The decree is affirmed.        *Decree affirmed.*