### CITY OF OMAHA v. VENNER.

(Circuit Court of Appeals, Eighth Circuit. March 14, 1917.)

No. 4757.

1. APPEAL AND ERROR ☞184—JURISDICTION—ADEQUATE REMEDY AT LAW—WAIVER OF OBJECTION.

Where the subject-matter of a suit is within the jurisdiction of a court of equity, the objection that complaint had an adequate remedy at law will not be considered, when made for the first time in the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1149, 1150, 1179–1183.]

2. MUNICIPAL CORPORATIONS ☞921(1)—BONDS—SALE—RESCISSION—MISTAKE.

Complainant submitted a bid for an issue of bonds of the city of Omaha, which was accepted, and was based on a circular sent out by the city inviting bids, and containing a financial statement which, inter alia, gave the "valuation for assessment purposes 1912, estimated," of the property in the city, at $164,167,720. Rev. St. Neb. 1913, § 6300, provides that all property subject to taxation "shall be valued at its actual value, * * * and shall be assessed at 20 per cent. of its actual value." The valuation given in the circular was the actual value as fixed under such statute, and the assessed valuation was one-fifth of that amount, but such fact was not stated and was not known to complainant. His bid was in the expectation of reselling the bonds to savings banks in New York and other Eastern states, by whose laws such bank were permitted to invest in bonds of municipalities whose net indebtedness should not exceed 7 per cent. of the valuation of their property for taxation. The indebtedness of Omaha was within such limit if the valuation given in the circular were taken, but largely exceeded it upon the assessed valuation. The attorney general of New York had ruled that in such cases the assessed valuation was to be taken. *Held*, that whatever construction should be placed on the statement of the circular or upon the statutes of the states limiting investments by savings banks, they were sufficiently uncertain to entitle complainant to be relieved from his bid on the ground of mistake in supposing that the statement referred to assessed valuation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1932, 1935.]

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

In Equity. Suit by Clarence H. Venner, doing business as C. H. Venner & Co., against the City of Omaha. Decree for complainant, and defendant appeals. Affirmed.

The appellee brought this action against appellant to obtain a rescission and cancellation of a contract arising out of a bid by him

and the acceptance thereof by appellant for certan municipal renewal bonds, and to recover the sum of $5,000 earnest money deposited with the bid. The district court granted the relief prayed for and appellant appeals. The material facts as shown by the record are substantially as follows:

Appellee is a dealer in investment securities in the city of New York. Early in April, 1912, he learned of a proposed bond issue by appellant on receiving from it a circular dated at Omaha, Neb., March 28, 1912, and signed by Fred H. Cosgrove, city comptroller. The circular stated that sealed bids would be received by the city council of the city of Omaha up to 8 o'clock, p. m. of the 16th day of April, 1912, for the bonds described in the circular, viz. 600 bonds, of the denomination of $1,000 each; that bids must be accompanied by a certified check in the sum of $5,000, to be regarded as liquidated damages in case of failure on the part of the successful bidder to carry out his contract; that bids should be subject to bonds having been legally and regularly issued. The circular contained among other information, under the heading "Financial Data," the following:

Bonded debt including these issues..................... $ 6,120,000 00
Valuation for assessment purposes, 1912, estimated...... 164,167,720 00
Tax rate for all purposes 1912 per one thousand dollars...        12 96
Debt limitation 5 per cent. of valuation as above.

At the time appellee was considering the above proposal he had in his possession another circular signed by the city treasurer of appellant for the sale of bonds, dated July 15, 1911, which contained among other information, under the heading "Financial Data," the following:

Assessed valuation ................................... $151,331,701 00
Tax rate per one thousand dollars.....................        12 58

On April 13, 1912, by letter addressed to the city council of appellant, appellee made an offer for all the bonds mentioned in the circular dated March 28, 1912, of 102.513 per cent., plus accrued interest, and accompanied the offer with a certified check for $5,000, payable to appellant in accordance with the requirement of the circular. Appellee relied upon the statements contained in the circular, and made his bid with reference to a sale of the bonds to savings banks in the states of New York, Massachusetts, New Hampshire, Vermont, and Rhode Island, which banks paid a higher price than that of the general bond market.

The law of Vermont conditioned the right of savings banks to purchase municipal bonds upon the fact that the municipality issuing the bonds did not have an indebtedness exceeding 7 per cent. of the last preceding valuation for the assessment of taxes.

The New Hampshire statute provided that the net indebtedness of the municipality issuing the bonds should not exceed 7 per cent. of the last preceding valuation of the property therein for taxation.

The Rhode Island statute provided that the net indebtedness of the municipality should not exceed 7 per cent. of the valuation of the taxable property therein for the assessment of taxes.

The Massachusetts statute provided that the net indebtedness of the municipality should not exceed 7 per cent. of the valuation of the taxable property therein, to be ascertained by the last preceding valuation of property therein for the assessment of taxes.

The New York statute provided that, if the indebtedness of the municipality should exceed 7 per cent. of the valuation for the purpose of taxation, its bonds and stocks should thereafter and until such indebtedness should be reduced to 7 per cent. of the valuation for the purposes of taxation, cease to be an authorized investment for the moneys of savings banks.

The bid of appellee was accepted by appellant April 17, 1912. On April 18, 1912, appellee was informed for the first time that the bonds of appellant as investments for the savings banks of New York had been decided invalid by the attorney general of that state. The attorney general had so decided

in December. 1911. Opinions of Attorneys General, New York, 1911, p. 686 Upon receiving this information, appellee wired Cosgrove, city comptroller of appellant: "We are informed that assessed valuation of Omaha is only one-fifth of amount stated in city circulars upon which we relied in making bid. Please wire explanation." April 19, 1912, appellee received a telegram from Cosgrove reading as follows: "Assessment made on one-fifth actual valuation." On same day appellee wired Cosgrove as follows: "Wire us exact amount assessed valuation for this year, also for 1911." On April 20. 1912, appellee received from Cosgrove a night letter reading as follows: "Exact assessed valuation for 1911 is $30,376,213; for 1912, $31,779,681. Full valuation or as stated in circular; valuation for assessment purposes is five times above amount. Debt limit based upon full valuation."

On the same day appellee mailed the following letter to Cosgrove, comptroller:

"New York, April 20, 1912.

"Fred H. Cosgrove, Esq., Comptroller, City of Omaha, Nebraska.

"Dear Sir: In reference to the $600,000 of city of Omaha bonds awarded to us, we telegraphed you on the 18th instant as follows: [Set out above.] We received your telegram on the 19th (dated the 18th), as follows: [Set out above.] As your telegram did not give us the necessary information, we wired you on the 19th as follows: [Set out above.] In answer to this last telegram we have received your telegram as follows: [Set out above.] In your circular dated March 28, 1912, inviting bids for the $600,000 of bonds, you stated, among other things, in reference to the financial condition of the city: 'Valuation for assessment purposes, 1912 (est'd.), $164,167,720.'

"This appearing to be an estimate, we inferred that the assessment rolls for 1912 had not been finally completed, and that the figures given were approximately correct. But to further assure ourselves with respect to the assessed valuation, we consulted our files, and found the circular dated July 15, 1911, signed Frank A. Furay, city treasurer, which invited proposals for $379,000 city of Omaha street improvement bonds. Among the other items set forth in said circular was, 'Assessed valuation, $151,331,701.'

"Construing the two circulars, we concluded that the assessed valuation for purposes of taxation for the year 1912 would show an increase of some $13,000,000 over the assessed valuation for 1911. It appears, however, from your telegram received to-day, that the exact assessed valuation for 1911 was only $30,376,213, and that for 1912 the exact assessed valuation is $31,779,681.

"The facts and figures above set forth raise a very interesting question. You are aware, as doubtless your predecessors have been, that the market for Omaha bonds, which has enabled the city to realize high prices for them, has been confined largely to the savings banks of certain Eastern states, which, by the laws affecting them, are permitted to invest their funds in the bonds of certain cities whose net indebtedness does not exceed a certain percentage of the assessed valuation of property in such cities. In New York state the percentage is 7 per cent., and in the other states 5 per cent.

"We bid for these bonds upon the faith of the representations contained in the circulars above referred to, to wit:

" 'Assessed valuation for 1911............................. $151,331,701'
" 'Estimated assessed valuation, 1912...................... 164,167,720'

—for the purpose of selling them to savings banks of the several states which would be legally allowed to buy them, if either of said statements of assessed valuation for 1911 or 1912 had been correct.

"You can imagine, therefore, that we are now considerably surprised to learn that the figures given for 1911 and 1912 are five times the amount of the assessed valuation. Under this condition, it is apparent that the bonds of the city of Omaha are no longer a legal investment for the banks in the states of New York, Maine, New Hampshire, Vermont, and Rhode Island, and we have just learned that the attorney general of the state of New York has so ruled in respect to this state.

"It is hardly necessary to call your attention to the fact that, with such a market closed to them, the bonds are not as valuable as they would otherwise

be, and that we will be deprived of the market and profit which we had in view when we made our bid.

"In our investigation of this subject of assessed valuation, we have, among other things, been furnished with a statement of the financial statement of the school district of Omaha, as shown by official records of October 26, 1911. Among the items are the following:

" 'Actual value of property........................................ $163,420,760'
" 'Assessed valuation for 1911..................·............... 32,684,152'

"Had you prepared your statement in the same form, giving separately the amounts of actual valuation and assessed valuation, we would not have been misled, and a very unpleasant question would not have arisen.

"This being Saturday, we have not had the opportunity of taking the matter up with our counsel, but we will do so on Monday, on which day we expect to receive for submission to counsel the transcript of the proceedings authorizing the issue of the bonds.

"Yours truly,                                      [Signed] C. H. Venner & Co."

April 25, 1912, appellee, receiving no reply to his letter of April 20th, wired Cosgrove as follows:

"New York, April 25, 1912.
"Fred H. Cosgrove, City Comptroller, Omaha, Nebraska:

"Under advice of counsel for reasons stated in our letter of twentieth and other material ones, we decline to take the six hundred thousand dollars city of Omaha bonds at our bid and request return of our five thousand dollar cheque. We are willing, however, subject to approval of legality by our counsel to buy the bonds at a fair price based upon your revised statement of assessed valuation and market conditions arising therefrom. Answer.

"C. H. Venner & Co.
"Chg. C. H. Venner & Co."

Appellant, acting on the above telegram, resold the bonds at a price more than $5,000 less than the bid of appellee, appropriated the proceeds of the certified check as liquidated damages, and at all times since has refused to return the same to appellee. The assessed valuation of property within the city of Omaha subject to taxation, as equalized and corrected by the state board of equalization and the county board of the county of Douglas, Neb., was for the year 1911, $31,494,743; for 1912, $32,808,025.

Section 12 of the Nebraska revenue law (Rev. Stat. Neb. 1913, § 6300) is as follows:

"All property in this state not expressly exempt therefrom shall be subject to taxation, and shall be valued at its actual value which shall be entered opposite each item and shall be assessed at twenty per cent. of such actual value. Such assessed value shall be entered in separate column opposite each item, and shall be taken and considered as the taxable value of such property, and the value at which it shall be listed and upon which the levy shall be made. Actual value as used in this chapter, shall mean its value in the market in the ordinary course of trade."

W. C. Lambert, of Omaha, Neb. (John A. Rine and L. J. TePoel, both of Omaha, Neb., on the brief), for appellant.

Halleck F. Rose, of Omaha, Neb. (John F. Stout and Arthur R. Wells, both of Omaha, Neb., on the brief), for appellee.

Before CARLAND, Circuit Judge, and RINER and MUNGER, District Judges.

CARLAND, Circuit Judge (after stating the facts above). It is urged in the brief of counsel for appellant that appellee had a complete and adequate remedy at law to recover the proceeds of the check accompanying his bid, and therefore a court of equity has no jurisdic-

tion of the present action. As to this point it is sufficient to say that where the subject-matter of a suit is within the jurisdiction of a court of equity and the objection that the complainant had an adequate remedy at law is not made until a hearing in the appellate court, the reviewing court will not consider the objection. Tyler v. Savage, 143 U. S. 79, 12 Sup. Ct. 340, 36 L. Ed. 82; Brown v. Lake Superior Iron Co., 134 U. S. 530, 10 Sup. Ct. 604, 33 L. Ed. 1021; Reynes v. Dumont, 130 U. S. 354, 9 Sup. Ct. 486, 32 L. Ed. 934; Highland Boy G. M. Co. v. Strickley (C. C. A. 8 Cir.) 116 Fed. 852, 54 C. C. A. 186; National Bank of Commerce v. Equitable Trust Co. (C. C. A. 8 Cir.) 227 Fed. 526, 142 C. C. A. 158.

It appears from the record that the question as to whether appellee had an adequate remedy at law was in no wise raised in the court below. Moreover, the appellee may have had much difficulty in recovering in an action at law the $5,000 earnest money, with the contract created by the acceptance of his bid in full force. It was alleged, in the answer of appellant to the complaint of appellee and also in the brief of counsel, that appellee's objection to carrying out his bid was not in good faith, but an attempt to cause the bonds to be sold to the next highest bidder, and the language contained in appellee's bid, requesting that the names and prices bid by the next two highest bidders should be telegraphed in case appellee became the successful bidder, is referred to in support of this charge.

[2] We have examined the testimony in the record carefully, and are clearly of the opinion that appellee acted in entire good faith in refusing to perform his bid. Appellee bases his right to recover upon two propositions: First, that the information contained in the circular of March 28, 1912, relating to the valuation for assessment purposes of the property of appellant for the year 1912, and also of the statement as to the tax rate for all purposes for 1912, per $1,000, were false, and placed in the circular by appellant with the intention of misleading persons who should desire to bid for the bonds offered for sale; second, if the statement shall be held to have been true, then appellee in bidding for the bonds acted under an honest mistake as to the material facts touching the assessed valuation and tax rate of appellant, and in either event he is entitled to rescind the contract and recover the sum demanded. In this connection appellee claims that, if the language of the circular shall be construed to mean the assessed value of the property of appellant for the year 1912, then the statement was false and known to be so by appellant; and, if the statement shall be construed to be true, then appellee was justified in believing that the language referred to the assessed value of the property of appellant for taxation in the year 1912. In other words, he honestly believed that the assessed valuation of the property of appellant was five times the amount of the actual assessment and that the tax rate was in all one-fifth of the actual tax rate.

The statement contained in the circular dated March 28, 1912, concerning valuation, is as follows: "Valuation for assessment purposes 1912, estimated." If this language is construed to mean the assessed value of property upon which the annual tax is to be levied, then the

amount of $164,167,720 is false, because the assessed valuation for the year mentioned was $32,808,025.

Appellant claims, however, that the words quoted, when taken in connection with section 12 of the Nebraska Revenue Law, supra, states the truth. Section 12 provides that all property subject to taxation shall be valued at its actual value, and shall be assessed at 20 per cent. of that value; that such assessed value shall be considered as the taxable value of such property and the value at which it shall be listed and upon which the levy shall be made. It therefore is claimed by appellant that, when its comptroller stated that the valuation for assessment purposes for the year 1912 was a certain amount, the statement referred to the actual value of the property subject to taxation, and not one-fifth of that amount provided by law as the assessed value.

Exhaustive arguments are made in the briefs on both sides for the purpose of showing how the language used with reference to valuation in the circular of March 28, 1912, should be construed, and cases are cited in support of the different contentions. Exhaustive arguments are also made as to how the laws of the different states in which appellee intended to sell bonds should be construed, with reference to the eligibility of municipal bonds as investments by savings banks in those states. But we think it is unnecessary to determine whether the statement in the circular of March 28, 1912, as to valuation, when properly construed, referred to the assessed value as defined by the Nebraska statute, or the actual value of all property subject to taxation. If it is a question upon which legal minds may differ, it certainly was a question concerning which appellee had a right to be honestly mistaken, and if in making his bid he honestly believed that the language referred to the assessed value of appellant's property for taxation, and not its actual value, then he would be entitled to refuse performance of the contract at the time he did when he learned the contrary, whether the language was used by appellant with the intention to deceive or not.

Whether or not the bonds for which appellee made his bid were eligible in the savings bank market of the states mentioned would depend largely upon how the statement in the circular of March 28, 1912, should be construed and this was another question which appellee ought not to be held to decide at his peril, and furnishes another reason why, if he was honestly mistaken as to the meaning of the language used, he should be entitled to relief.

The statement as to valuation contained in the circular was a statement of fact and material, however we may construe the language used. In Chicago v. Fishburn, 189 Ill. 367, 59 N. E. 791, it was decided under a statute similar to section 12, supra, that the debt limitation should be computed upon the assessed valuation, and not upon the actual value which is ascertained in the process of fixing the assessed value. On the other hand, in the case of Halsey v. Belle Plaine et al., 128 Iowa, 467, 104 N. W. 494, under a statute of Iowa similar to section 12, supra, it was decided that the debt limit should be computed on the actual value and not on the assessed value.

If these learned courts may differ as to the meaning of the different statutes, it is clear that appellee could be honestly mistaken as to the meaning of the language used in the circular of March 28, 1912, and his testimony that he thought the language referred to the assessed value stands uncontradicted.

We are satisfied from the evidence in the record that the judgment of the lower court was right. We base our decision upon the proposition that if the language used with reference to valuation in the circular of March 28, 1912, shall be construed to mean the assessed value of the property within the city of Omaha, then it was false, and it is immaterial whether it was intentionally false or not so far as appellee is concerned. If the language used shall be construed to refer to the actual value of the property within the city of Omaha for taxation, then on this record appellee was honestly mistaken as to the meaning of the language when he made his bid, and in either event he is entitled to rescind and recover the money deposited with his bid. Turner v. Ward, 154 U. S. 618, 14 Sup. Ct. 1174, 23 L. Ed. 391; Smith v. Richards, 13 Pet. 26, 10 L. Ed. 42; Hearne v. Marine Ins. Co., 20 Wall. 488, 22 L. Ed. 395; Moffett v. City of Rochester (C. C.) 82 Fed. 255, affirmed in Moffett v. City of Rochester, 178 U. S. 386, 20 Sup. Ct. 957, 44 L. Ed. 1108.

It is suggested by counsel for appellant that the mistake of appellee, if he was mistaken, was a mistake of law, and therefore not relievable in a court of equity. It may be conceded that as a general rule a mistake of law is not a ground for rescission of a contract, but there are exceptions to the rule. Snell v. Insurance Co., 98 U. S. 90, 25 L. Ed. 52. We do not think the mistake of appellee was one of law. He testifies and it is uncontradicted, that he thought the valuation stated in the circular was the assessed valuation. As a matter of fact it was the actual value.

It is further urged by counsel for appellant that the evidence shows that appellee was in some doubt as to the meaning of the language in regard to valuation contained in the circular of March 28, 1912, and thereupon he consulted the circular of July 15, 1911. Appellee testified that he consulted the circular of July 15, 1911, because of the use of the word "estimated" in the circular of March 28, 1912; that he inferred that the tax rolls had not been finally made up for 1912, and for that reason he consulted the circular of July 15, 1911, which gave the assessed valuation for 1911 at $151,331,701.

We think appellee had a right to rely upon the statements made in the circular, and that he did so rely when he made his bid; that the statement as to valuation was either false, or, if not, appellee was honestly mistaken in respect thereto when he made his bid, and in either event he is entitled to the relief prayed for.

Affirmed.