Argued April 17, reversed and remanded June 24, 1919.

## CHURCHILL v. MEADE.*

(182 Pac. 368.)

(See, also, 88 Or. 120 (171 Pac. 565).

**Action—Equitable Defenses in Action at Law.**

1. Section 390, L. O. L., as amended by act of February 13, 1917, providing that defendant in law action who is entitled to equitable relief "may set such matter up by answer," does not compel litigant to interpose equitable defenses in law action, but permits him to try out defenses at law, and, if unsuccessful, urge grounds for equitable relief by proper suit.

**Reformation of Instruments—Nature of Remedy—"Reformation."**

2. "Reformation" contemplates a continuance of the contractual relations upon what both parties really intended should be the stipulation.

[As to instruments subject to "reformation," see note in 65 Am. St. Rep. 505.]

**Pleading—Hypothetical Allegations.**

3. An averment that a party would not have done a hypothetical act presents no issuable matter; for it cannot be proved or refuted.

---

*For authorities passing on the question of relief from purchase on ground of mistake, see note in 34 L. R. A. (N. S.) 927. REPORTER.

**Pleading—Allegations—Conclusion—"Facts."**

4. In action to set aside decree confirming execution sale upon ground of mistake, allegation that plaintiffs would not have bid so much if they had calculated correctly *held* a conclusion, and not statement of fact; "facts" being actualities and what have taken place, and not what might or might not have taken place.

**Equity—Maxims.**

5. Equity ministers to the diligent, and not to the negligent.

**Courts—Records—Correction—In Term.**

6. During the term the record of the court's proceedings is in the bosom of the court and subject to correction.

**Execution—Setting Aside Confirmation of Sale.**

7. Decree confirming execution sale will not be set aside after term at which it was entered except through an original suit to set it aside based upon some equitable ground for relief.

**Execution—Setting Aside Confirmation of Sale—Mistake.**

8. In view of Section 756, L. O. L., equity will not set aside decree confirming execution sale merely because judgment creditor purchased property for a sum in excess of balance due on judgment, and in excess of value of property, as result of miscalculation as to balance due on judgment.

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 1.

By suit in the Circuit Court of Tillamook County the plaintiff Churchill as the assignee of his coplaintiff foreclosed a mortgage against the defendants herein, upon real property and chattels in that county and upon realty in Multnomah County. Execution was issued on the decree and the Tillamook land was sold as the complaint here alleges, for $15,000, its full value. The chattel property also was sold and its proceeds were applied to the partial satisfaction of the decree. Another execution was issued to the sheriff of Multnomah County for the satisfaction of the unpaid balance and on October 16, 1916, at an adjourned sale for want of bidders at the advertised date, the property was struck off to the plaintiff Churchill for $3,110. No bids were received at the sheriff's sale except that of Churchill.

It is stated in the complaint, in substance, that the intention of Churchill for himself and his coplaintiff was that the amount to be bid for the Portland property was the balance remaining unpaid on the decree and that the intention was that the amounts bid should be paid only by having the same applied on the judgment. It is averred that the Portland realty was worth not more than $1,550 and neither of the plaintiffs would have been willing to take either of the tracts in Portland for that amount, but bid more than the property was worth, so that if redemption were made the plaintiffs would have the benefit thereof, to the end that the decree should be entirely' satisfied. They say that:

"In fixing the amounts to be bid for said property plaintiffs had a calculation made of the balance still unpaid on said judgment, and according to the said calculation, there remained at the time of sale of the, Portland property, a balance unpaid upon said judgment of $3,588.25."

They aver that they relied upon the calculation, believing it to be correct, and acting thereon and not otherwise, made the bid as stated, intending that the amount thereof should be paid only by giving credit therefor on the balance of the judgment. They say that they would not have made the bid if it had required the payment of any money. They further allege:

"That in the calculation aforesaid, a mistake occurred in that by oversight and inadvertence, interest for one year upon the principal amount named in the judgment was added and in consequence thereof, the total amount calculated as accrued upon said judgment was $1,012.50 greater than the true amount accrued; that plaintiffs had no knowledge or information that said mistake had been made and did not discover said error until on or about July 10, 1918."

The sales were confirmed by the Tillamook court about November 20, 1916, without detection of the mistake then or by anyone until about July 10, 1918, when one of the attorneys for the defendants for the first time discovered that a correct calculation of the amount accrued upon the judgment showed that it had been overpaid by the bid and that upon the face of the record the plaintiffs had received from the sheriff upwards of $700 more than the amount of the judgment when the amount due was computed correctly. The plaintiffs plead several offers to the defendants to adjust the matter by giving them credit on the judgment for the amount of the excess and otherwise, declare that no income has been received by the plaintiffs for the Portland property, that no sheriff's deed has been issued and that the sheriff's certificate has been assigned to the plaintiff Beals.

The complaint alleges that the defendants are demanding payment from the plaintiffs of the amount overpaid and that the defendant Minnie Meade has brought an action against Churchill in the Circuit Court of Multnomah County, to recover the surplus, claimed by her to be $774.95, well knowing that the apparent balance is the result of the mistake already mentioned. This pleading further avers:

"That the aforesaid mistake was not caused by the gross negligence on the part of the plaintiffs, in that said calculation was made at a time when the sheriff's returns of sales on chattel mortgages had not been filed and the exact amount to be credited on said judgment on account thereof had not been determined, and by reason of the fact that said sales were made at different times and required several calculations as to amount of interest accrued to the dates when the credits were to be given, and by reason of said complications, confusion crept into the calculations being made and by the aforesaid inadvertence, mistake and

oversight, interest for one year and a portion of another year was included, when only interest for a portion of the year should have been included.''

The plaintiffs express a willingness that the sale and confirmation be set aside, the proceedings connected therewith canceled and a resale of the property made, or to set aside the judgment allowing the sale to stand and to transfer the property to the defendants on the terms offered to them, or to have such other disposition made of the transaction as the court may deem equitable. Claiming to have no plain, speedy or adequate remedy at law, they pray that the confirmation be set aside and that the defendants be enjoined from prosecuting any action against the plaintiffs for the apparent excess of the bid over the amount of the judgment.

The defendants interposed a demurrer to the complaint on the following grounds:

''First. The complaint shows that the court has no jurisdiction of the persons of the defendants, or of the subject matter.

''Second. The complaint shows that there is another action at law pending in Multnomah County, Oregon, between the real parties at interest herein, for the same cause, arising out of the same state of facts, wherein the relief sought herein if just, could be obtained by a cross-bill in equity, in the manner provided by the Code, and that said action was pending at the time the complaint herein was filed.

''Third. There is a defect of parties plaintiff, in that plaintiff F. R. Beals is a stranger in this action, as shown by the allegations of the complaint, plaintiff Churchill being alone the party at interest under the pleadings.

''Fourth. That several causes of suit have been improperly united, to-wit: a suit to vacate a final judgment of this court, and a suit asking equitable relief

against a law action pending between the parties in Multnomah County, Oregon.

"Fifth. Because the complaint does not state facts sufficient to constitute a cause of suit against the defendants, or either of them."

The Circuit Court overruled the demurrer and the defendants having declined to plead further, a decree was rendered setting aside the sale and confirmation and enjoining the prosecution of the action at law. The defendants appealed.

REVERSED AND REMANDED.

For appellants there was a brief over the name of *Messrs. Johnson & Handley,* with an oral argument by *Mr. Tom B. Handley.*

For respondents there was a brief and an oral argument by *Mr. H. T. Botts.*

BURNETT, J.—The defendants contend that the plaintiffs have a full and adequate remedy for the matters alleged in their complaint in the action at law pending in Multnomah County. They rely upon Section 390, L. O. L., as amended by the act of February 13, 1917 (Laws 1917, p. 126), reading as follows:

"Bills of revivor and bills of review, of whatever nature, exceptions for insufficiency, impertinence, or irrelevancy, and cross bills are abolished; but a decree in equity may be impeached and set aside, suspended, avoided, or carried into execution by an original suit; and in an action at law where the defendant is entitled to relief, arising out of facts requiring the interposition of a court of equity, and material to his defense, he may set such matter up by answer, without the necessity of filing a complaint on the equity side of the court; and the plaintiff may, by reply, set up equitable matter, not inconsistent with the complaint and constituting a defense to new matter in the

answer. Said reply may be filed to an answer containing either legal or equitable defenses. The parties shall have the same rights in such case as if an original bill embodying the defense or seeking the relief prayed for in such answer or reply had been filed. Equitable relief respecting the subject matter of the suit may thus be obtained by answer, and equitable defenses to new matter contained in the answer may thus be asserted by reply. When such an equitable matter is interposed, the proceedings at law shall be stayed and the case shall thereafter proceed until the determination of the issues thus raised as a suit in equity by which the proceedings at law may be perpetually enjoined or allowed to proceed in accordance with the final decree; or such equitable relief as is proper may be given to either party. If, after determining the equities, as interposed by answer or reply, the case is allowed to proceed at law, the pleadings containing the equitable matter shall be considered withdrawn from the case, and the court shall allow such pleadings in the law action as are now provided for in actions of law. No cause shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have a right to amend his pleadings to obviate any objection on that account. Testimony taken before the amendment and relevant to the issue in the law actions shall stand with like effect as if the pleadings had been originally in the amended form. *Provided,* nothing in this amendment shall operate so as to affect suits or actions pending at the time the same goes into effect."

1. It will be noted that the language of the new enactment is permissive and not mandatory. It allows but does not compel the litigant to interpose in the action at law equitable defenses. This construction is apparent when we read that when the equitable matter is interposed the case shall proceed as a suit in equity until the equitable issues are determined. The effect of this statute is not to change the opera-

tion of the old rule giving a party an election to try out his defenses at law and, if unsuccessful, to urge his grounds for equitable relief by a proper suit. It may be said by a figure of speech that the statute opens a new door into chancery through the law courts, whereas before, the entry must have been by a direct suit in that forum. As before, it is a matter of election with the litigant whether he shall initiate his equitable defense in the law action or by an original suit. The plaintiff might make his legal defense under *Burbank* v. *Dodd,* 4 Pac. 303, not found in the Oregon reports, which decides that only the sheriff can recover an unpaid bid made at a sheriff's sale.

If well grounded, the right to bring this suit would exist independent of whether the action at law in Multnomah County had been instituted or not. The essence of the matter is contained in the question of whether the decree of confirmation, adjudicating, as it does, all the questions which might be raised against confirming the sale, may be set aside because the purchaser discovers that he paid more for the property than he intended. The instant suit is a direct attack upon the decree of confirmation. Unless successfully assailed, the decree is conclusive between the parties and their representatives and successors in interest by title subsequent to the commencement of the action: Section 756, L. O. L.

The cases cited by the defendants, *Mathews* v. *Eddy,* 4 Or. 225, *Dolph* v. *Barney,* 5 Or. 191, and *Wright* v. *Young,* 6 Or. 87, were all of them instances where a confirmation of sale was upheld as against a collateral attack. In *McRae* v. *Daviner,* 8 Or. 63, there was no attempt to show any equitable ground for relief and it was held that the confirmation was a conclusive adjudication. In *Leinenweber* v. *Brown,* 24 Or. 548 (34

Pac. 475, 38 Pac. 4), the plaintiff showed no excuse for not urging against the confirmation the very objections presented in the complaint. *Farmers' Loan Co. v. Oregon-Pacific R. R. Co.,* 28 Or. 44, 70 (40 Pac. 1089), was a case where there was an appeal directly from the order of confirmation, and *Balfour* v. *Burnett,* 28 Or. 72 (41 Pac. 1), was a similar case of appeal from the confirmation.

The defendants urge that the mistake must be mutual in order to justify the court in setting aside the decree of confirmation, but a distinction is to be made between the reformation and the rescission of a contract. For instance, in *Mitchell* v. *Holman,* 30 Or. 280 (47 Pac. 616), it is said:

"While a mistake of one party to an agreement may in some instances be ground for the rescission of the contract, or afford a sufficient reason for a refusal by a court to enforce specific performance thereof, it clearly will furnish no ground for reforming it."

2. Almost without exception the cases relied upon by the defendants are instances where it is sought to reform and not to rescind a contract. Reformation contemplates a continuance of the contractual relation upon what both parties really intended should be the stipulation. Rescission, however, proceeds upon the ground that on account of the mistake of one of the parties his mind in very truth did not assent to the contract as written. In other words, there was in fact no meeting of minds, which leads logically to a rescission or ending of the pseudocontractual relation.

In *Hughey* v. *Smith,* 65 Or. 323 (133 Pac. 68), Mr. Justice MOORE laid down the rule thus:

"The declaration that except for the mutual mistake referred to, Hughey and his wife would not have executed the lease to Smith, is not an allegation of any material fact, but rather the statement of a conclu-

sion of law sought to be deduced from the preceding averments, and insufficient for any purpose'': Citing *Hyland* v. *Hyland,* 19 Or. 51, 57 (23 Pac. 811).

*Hughey* v. *Smith,* 65 Or. 323 (133 Pac. 68), was a suit to cancel a contract for the leasing of some land. The Hugheys had leased their property to Smith, to commence April 1, 1912. It turned out that their previous lease to one Borba would not expire until a year later. Smith brought an action for damages and the Hugheys responded by a cross-bill in equity to cancel the contract. Their averment was:

"That at the time of the execution of the lease to the defendant herein, the said James Hughey and Myra Hughey and Hiram W. Smith were of the opinion that the said lease to the said Borba would expire on the 1st day of April, 1912. That the said Myra Hughey, at the time of the execution of said lease to the defendant, was in failing health and memory, and the defendant well knew the same, and the said James Hughey was and is a man of limited education, and was and is unable to read or write, all of which was and is well known to the defendant herein, and that by reason thereof they were each laboring under a mutual mistake and a misapprehension of fact, and said lease to defendant was made and entered into under a mutual misapprehension and mutual mistake of fact. That except for said mutual misapprehension and said mutual mistake of fact the plaintiff James Hughey, nor his wife, * * now deceased, would have made and entered into said lease."

The opinion of Mr. Justice MOORE points out that the ill health of the one and the illiteracy of the other of the plaintiffs were not sufficient to prevent them from comprehending the terms of the contract and that it does not necessarily follow that they would not have made it, so that their statement in that respect was a mere conclusion. In a characteristic homily on

the subject of pleading, Mr. Chief Justice THAYER, delivering judgment in *Hyland* v. *Hyland,* 19 Or. 51 (23 Pac. 811), said:

"Attorneys who prepare complaints to reform written instruments are too apt to state conclusions instead of facts. They should set out the transaction as it occurred and not the legal effect thereof. The complaint in this case should have stated what the parties mutually agreed to do in regard to the exchange of their lands, and not the result of what they did do. * * If the complaint had lacked some material allegation, the defect would be fatal and could be taken advantage of without interposing a demurrer; but where the defect consists in alleging evidence of facts, or conclusions of facts instead of the facts themselves, it will be waived unless a demurrer is taken to the pleading."

3, 4. In the Hyland case the court was treating of conclusions of facts and not of any deduction to be drawn as a matter of law from any alleged state of facts. In the instant case it is enough to say that any pleading except a denial or a demurrer must contain statements of facts. Facts are actualities. They are what took place, not what might or might not have happened. Things that have in very truth occurred are usually capable of proof. Conjecture is as far as we can go in respect to what might have been but was not. An averment that a party would not have done a hypothetical act presents no issuable matter, for it cannot be proved or refuted. The result is that when the plaintiffs say they would not have bid so much if they had calculated correctly, they are drawing their own inference. Whether it be a conclusion of fact or one of law, it is nevertheless a conclusion which as a matter of pleading does not aid the complaint.

5. In this instance, the plaintiffs say that they had a calculation made. It is not disclosed by the com-

plaint what factors entered into the calculation and how the plaintiffs were induced to add an extra year's interest. Certainly nothing is stated except the bare fact that they made a mistake. No excuse is given for such an error. It happened without anything to induce it. Equity ministers to the diligent and not to the negligent, and we have often held that if the error could have been avoided by a reasonable attention to one's own affairs, one cannot expect relief in chancery.

*Campbell* v. *Parker,* 59 N. J. Eq. 344 (45 Atl. 116), was a case where a purchaser made a bid at a receiver's sale, advanced 10 per cent of his bid and filed a written memorandum of his purchase for the full amount. After the property was struck off to him and before signing the bid, he inquired from the receiver whether the land was free from encumbrance and was told by the receiver, "Yes, as I understand it." In a proceeding at the suit of the receiver to compel the bidder to show cause why he should not comply with his offer, the court held that the doctrine of *caveat emptor* applies to such sales and that the bidder contracts at his peril.

In *Hayes* v. *Stiger,* 29 N. J. Eq. 196, the purchaser at a foreclosure sale based on a junior mortgage bought without reference to the record fact that there was a senior mortgage upon the land and an inchoate right of dower. The court held that:

"As the case stands, the highest equity he can claim is, that he has not made as good a bargain as he expected to make. This can hardly be estimated an equity sufficient to sustain the abrogation of a contract."

Similar cases from New Jersey are *Twining* v. *Neil,* 38 N. J. Eq. 470; *Sullivan* v. *Jennings,* 44 N. J. Eq. 11

(14 Atl. 104), and *Boorum* v. *Tucker,* 51 N. J. Eq. 135 (26 Atl. 456).

In *Farm Land Mortgage & Debenture Co.* v. *Hopkins,* 63 Kan. 678 (66 Pac. 1015), the plaintiff foreclosed its senior mortgage, obtaining a decree for $2,150. At the same time there was a decree against the mortgagors on a junior encumbrance, for $654.30. An attorney for the plaintiff who, however, had not conducted the proceedings up to the time of sale, attended the sale and having inquired from the deputy sheriff the amount of the judgment held by the company and having stated that he desired to bid that amount for the company, was informed that the company's decree amounted to $2,838.05, being the sum of both decrees with interest, instead of only the company's decree. In an action by the sheriff to recover the amount of the bid, the company pleaded the conduct of the sheriff as estoppel. The court, after discussing the matter, said:

"Here there was no design by the sheriff to deceive, and there was no obligation resting upon legal duty to obtain and give information to the company. A mistake of fact was made, it was true; but, before equitable relief can be afforded, it must appear that the fact was not only not known to the party, but that it was one which he could not by reasonable diligence have ascertained. Negligence often weakens a claim for equitable relief, and the general rule is that where a party neglects to avail himself of the means of information and to ascertain facts upon which his claim is based, where it is as much his duty as that of the party with whom he deals to know the facts, equity will not relieve against his own negligence."

That case was one much stronger for relief than is the present instance. There the sheriff, without design to defraud it is true, misrepresented the amount due on the decree, but the court held that the data

for ascertaining the amount was of record and equally within the reach of the plaintiff company, so that it was through its own negligence that it did not know the truth. Here no misrepresentation of the amount due upon the decree is imputed to anyone, certainly not to the defendants. No reason is assigned why the mistake was made in computing the amount. It is not indicated that any factor of the problem was concealed or that the plaintiff was misled in any respect. Several cases are cited by the plaintiffs where bids on public works were allowed to be withdrawn on account of mistakes made in computing the bids. But in each instance there was some ground or reason for the mistake. For example, in *Board of School Commissioners* v. *Bender,* 36 Ill. App. 164 (72 N. E. 154), the bidder did not receive sufficient notice of the letting of the contract, so that he was very much hurried in making up his estimate and in his haste turned two leaves of his estimate-book, with the result that his bid was made very much lower than he had actually computed, and he would suffer great loss if the bid was enforced. He promptly notified the authorities before the contract was let, and it was awarded to the next lowest bidder, so that equity relieved him of the forfeiture of his deposit.

In *City of Omaha* v. *Venner,* 243 Fed. 107 (155 C. C. A. 637), the defendant bid on an issue of municipal bonds, expecting to sell them again at a profit in New York for savings bank security. The language of the advertising circular under which he made his bid was uncertain as to whether the taxable property of the city was counted at its full value or only 20 per cent thereof as a basis of security for the bonds. Finding that he could not resell in New York on account of statutory restrictions requiring full value of

taxable property for such purposes, he was relieved from his bid on account of the uncertainty of the advertisement.

The case of *Interstate Bank* v. *O'Dwyer*, 15 Tex. Civ. App. 33 (38 S. W. 368), was an instance where the court directed the sale of the personal and real property of a corporation in the hands of a receiver and provided that on receipt of $5,000 in cash the remainder of the price might be paid in approved claims against the corporation. At the time the order was made the receiver stated in open court that $5,000 would pay all claims entitled to preference over that of the purchaser. Under these circumstances the purchaser bid a certain price, thinking to apply his own claim in satisfaction of his bid. It happened, however, that there were claims having preference over his largely in excess of $5,000. Owing to this misunderstanding he was relieved from his bid.

6. *Anschutts* v. *Steinwand*, 97 Kan. 89 (154 Pac. 252), was a case where the plaintiff's attorney had instructions from his client to bid $300 for a certain tract, subject to a prior mortgage for $1,100. The attorney telegraphed the sheriff, authorizing a bid of $300 "over the first mortgage," instead of "subject to the first mortgage." The application to set aside the decree of confirmation was made at the same term at which it was rendered and the court granted the relief desired. This conclusion must be justified on the ground that during the term the record of the court's proceedings was in the bosom of the court and subject to correction.

7, 8. The present instance is one where on the motion of the plaintiff in the writ the decree of confirmation was entered and the matter passed beyond the jurisdiction of the court, except through an original

suit to set the decree aside. This must proceed upon some equitable ground for relief and not upon the heedlessness or mere oversight of the plaintiffs not influenced by some reasonable excuse. There must be something more than a spontaneous vagary of the mind. The excuse must rest upon some external circumstance calculated, although without complete justification, to induce the mental process resulting in the mistake from which the one in error seeks to be relieved. The purchaser attended the sale, warned by the law that the buyer must beware. The object of the sale was to bring as much for the property as could be obtained and if, by his own inadvertence, uninfluenced by any other cause, he has paid too dearly for the property, he is beyond the pale of equity and cannot be relieved. A contrary ruling would imperil the permanence and conclusiveness of judgments and decrees as declared in Section 756, L. O. L.

The demurrer to the complaint ought to have been sustained. The decree of the Circuit Court is reversed and the cause remanded for further proceedings, but without costs or disbursements for either party in this court.    REVERSED AND REMANDED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.